# In the United States Court of Appeals for the Federal Circuit

## Case No. 14-1598

## Re: Trademark "SHIMMERING RAINFOREST"

*Prema Jyothi Light,*
*Appellant*

*vs.*

*The Trademark Trial & Appeal Board (TTAB),*
*Appellee.*

RECEIVED
2015 JAN 14 PM 2: 55
US COURT OF APPEALS
FEDERAL CIRCUIT

*On Appeal From Decision, Dated December 13, 2013,*
*of TTAB Administrative Judges:*
*Ellen J. Seeherman, Thomas W. Wellington, and Angela Lykos*

## APPELLANT'S BRIEF

*Prema Jyothi Light, pro se*
*12000 E. 16th Avenue, #301*
*Aurora, CO 80010*
*(720) 648-4753*
*premajyothilight@love4truth.com*

i

# **TABLE OF CONTENTS**

I.    List of Illustrations ............................................................... viii

        Illustration # 01:    Trademark in Color ..................................... ix
        Illustration # 02:    Trademark in Black-&-White ......................... x
        Illustration # 03:    Sample Color Leaflet, Front Cover,
                              "Meet Franz & Francine, the Raffrettaloes,
                              The Very Special Shimmering Rainforest
                              Giraffes" ............................................... xi
        Illustration # 04:    Sample Color Leaflet, Inside Left Page ............ xii
        Illustration # 05:    Sample Color Leaflet, Inside Right Page .......... xiii
        Illustration # 06:    Sample Color Leaflet, Back Cover, Showing
                              The Trademark Functioning As Trademark ............. xiv

II.   Table of Authorities ............................................................ xv

III.  Certificate of Compliance ..................................................... xvi

IV.   Tables of Documents in the USPTO Original Record For
      SHIMMERING RAINFOREST,
      With Alphanumeric Codes for Easy Reference ........................... xvii

              A.    How to use these Tables ...................................... xvii
              B.    Alphanumeric Code for Documents
                    as Referenced in these Tables ............................. xvii
              C.    Why these Tables are Necessary ........................... xvii
              D.    Trademark Documents (Pre-TTAB) ......................... xviii
              E.    TTAB "Proceedings" Documents ........................... xxiii
              F.    USPTO Status Documents For This Case .................. xxix

V.    Appellant Light, as an IFP litigant, hereby requests that this Case be
      heard on the Original Record, in accord with F.R.A.P Rule 24(5(c ) ....   1

VI.   Statement of Related Cases ...................................................   2

VII.  Jurisdictional Statement .....................................................   2

ii

# TABLE OF CONTENTS *(continued)*

VIII.  Statement of the Issues (listed further in this Table of Contents
under The Argument, to show the pages for further discussion
of each Issue) ........................................................................... 2

IX.  Statement of the Case ................................................................. 2

X.  Statement of the Facts ................................................................. 3

XI.  Summary of the Argument .......................................................... 4

XII.  The Argument ............................................................................. 5

Standard of Review ..................................................................... 5

Issue # 01:  The Original Trademark Application is not all at the
beginning of the Record, where it should be. .............................. 5

a.  The Judges will have to look in eight places in the USPTO
Records for SHIMMERING RAINFOREST to even find
most of the elements of the Original Trademark
Application. ..................................................................... 5

b.  The document titled "Drawing Original Restored"
(SR-TMDOC-093) is an error, as this Standard Character
version was never one of the Original Drawings. This
was filed as an alternate version almost EIGHT YEARS
LATER (SR-TMDOC-052) . This was an "OFF BY
EIGHT YEARS" mistake by the new Examining
Attorney, after the previous Examining Attorney
retired.      ............................................................... 7

c.  Then, instead of correcting this Error, another wrong
entry was dropped into the Record ( SR-TMDOC-032),
a back-dated, blurry version of the Original Trademark
Drawing, mis-titled "Amended Drawing". ....................... 7

iii

**TABLE OF CONTENTS** *(continued)*

<u>Issue # 02</u>:    There have been at least 50 (fifty) flagrant, serious Incidents
of Document Mishandling by USPTO staff, in handling the
documents for this Case, which have affected the Records. ….....    8

    a.    This affects the Records,which affects the Court of Appeal
Judges, because they have to review the Records, for a
good understanding of the Case. ….........................................    9

    b.    There has also been a lot of mis-titling of documents in
the Record by the USPTO. …...................................................    10

    c.    Possible reasons for the long-standing mishandling
of the documents for these Cases, by the USPTO. …................    10

    d.    A related issue is the recent garbling of the Online
Records for this Case in TSDR, their Document viewing
system, while Appellant was trying to work on this Brief.
This is not a fair way for the USPTO to try to win a case. …....    12

    <u>Issue # 03</u>:    There are several clear Errors in Law made by the TTAB
in arriving at its Final Order for this Case, which need to come
under the review of this Court. …...................................................    14

    a.    This Trademark easily qualifies for Registration
on the basis of Acquired Distinctiveness under Federal Law,
as stated under 15 U.S.C. §1052 (f).  It was a plain
and clear Error in Law, to fail to grant Registration
to these Trademarks, under 15 U.S.C. §1052 (f).  …..................    14

    b.    This Trademark qualifies for Registration because it is
Inherently Distinctive, and easily recognizable. …....................    14

    c.    The TTAB "broke the law" by failing to grant Appellant's
Request for Remand, dated 03-28-13, when the Examining
Attorney failed to issue a Non-Final Office Action in response
to New Issues, as mandated by TMEP § 714.05(a).  If the
TTAB is going to call upon provisions of the TMEP,
they themselves should honor the TMEP. …..............................    17

iv

**TABLE OF CONTENTS** *(continued)*

Issue # 03 *(continued)*:

      d.    One reason the Case is so long-standing is that it has come before the TTAB four times, and was remanded to the Examining Attorneys three times (SR-TTAB-041, SR-TTAB-066, SR-TTAB-071) for further consideration. It did not just come before the Board once. ........................ 18

      e.    A ruling by this Court, granting registration to Appellant's Trademark, would serve the public good, because it would encourage the TTAB to observe due process, even for humbly-circumstanced Applicants, in accord with provisions of the TMEP and Federal Law. This would help many future Applicants for Patent & Trademark Registration, all for the good of the greater public. ..................................................... 19

      f.    This would also promote judicial economy, as it would save many other Applicants from having to appeal to the U.S. Court of Appeals, due to a failure of the Board to observe proper, time-honored, and lawful due process, in its handling of Trademark cases. ......................................... 19

Issue # 04:  This Trademark <u>does</u> clearly function as a Trademark, and does serve as a Source Indicator, to distinguish Appellant Light's goods from the goods of others. ..................................................... 19

      a.    This Trademark is easily recognizable, and often placed on the back cover of the leaflets or publications, where Trademarks are customarily found. ......................................... 21

      b.    The Trademark is the whole Trademark, inside the outer bounding box, including its fine print as well as the larger creative calligraphy. ............................................. 21

v

## TABLE OF CONTENTS *(continued)*

**Issue # 04** *(continued)*:

    c.    All of the elements of the Trademark, including the fine print, contribute to its overall Fanciful, Distinctive, Unusual and Unitary Commercial Impression, in accord with TMEP § 1213.05, which should make further word or design searches unnecessary. ............................................. 21

**Issue # 05:**  Registration for this Trademark, in color, should be grantable, even if it was originally submitted in black-&-white. There is provision in the TMEP for this [TMEP § 807.14 (e)(i)]. ..... 22

    a.    This Trademark, in its color version and in its black-&-white version, have long been in use, and are easily recognizable as the same Trademark, so the Overall Commercial Impression remains the same. Many businesses use their Trademarks in both color and black-&-white.  It is not unusual to do this. ............................ 22

**Issue # 06:**  Registration of the Trademark is requested with all typographical errors corrected, in a Trademark with many fanciful verbal elements. ............................................................. 24

    a.    Regarding typographical errors made by USPTO staff, in typing the small print straight from this Trademark into the electronic Records, they have, to date, made an unusually huge number of typographical errors themselves.  And, they have refused to correct many of their own typographical mistakes, even when these have been called to their attention, and correction has been requested, and even when their mistakes affect public Trademark searches online.  When asked to correct their errors, they just make a flurry of new ones.  This is actually unlawful. ...................................... 24

    b.    Currently the tally of USPTO keystroke errors, by USPTO typists, in typing these Trademarks into the Record, is three-hundred-thirty-four (334)

vi

## **TABLE OF CONTENTS** *(continued)*

**Issue # 06 b.** *(continued)*:

    keystroke errors, for two Trademarks which each
have been portrayed, on their Original Drawing
Pages, as only four inches square.  (They have
made 160 keystroke errors in SHIMMERING
RAINFOREST, and 174 keystroke errors in
SHIMMERING BALLERINAS & DANCERS).
These should all be corrected. ….......................................…..... 25

c.    Appellant has been in recovery from a bus transportation
accident, and two serious car accidents, and therefore has
had to rely upon others, who have made inadvertent
mistakes in typing. …............................................................ 25

d.    Here are examples of corrections of simple typos which
her own typists made, which Appellant is requesting to be
allowed to correct. …............................................................ 25

e.    No typographical corrections are requested for the
larger, primary verbal elements of the Trademark,
which are the larger creative calligraphy for
SHIMMERING RAINFOREST. …......................................... 26

f.    Correction of typographical errors, by Appellant's typists,
in very fine print, does not alter the Overall Commercial
Impression of the larger, very distinctive Trademark in
any way, so these should be allowable.  …................................. 26

g.    The deliberate "big blob typos" on the part of the USPTO,
in mis-portraying Appellant's Trademarks in the electronic
Status Records, which should be corrected. ….......................... 26

h.    Applicant is asking to be allowed to correct any typos
which her own typists have made, as long as the Overall
and Unitary Commercial Impression of the Trademark
remains the same.  …............................................................. 27

vii

## **TABLE OF CONTENTS** *(continued)*

Issue # 06 *(continued):*

      i.    Corrections of typographical changes in Trademarks
are supported by case law. …..................................................... 27

Issue # 07:  As for disclaimers, Examining Attorney Gast
persuaded Appellant to agree to disclaim the word
RAINFOREST in isolation, and the word CHARACTER
in isolation, and the word COLLECTION in isolation,
but SHIMMERING RAINFOREST, as a pair of words
together, is not disclaimed.  And, according to the TMEP,
disclaimers, overall, are not needed when a Trademark has
a distinctive, overall Unitary Commercial Impression. …................. 28

Issue # 08:  This Trademark conveys a Unitary Commercial
Impression, in accord with TMEP § 1213.05, which
should make further design searches unnecessary. …........................ 29

Issue # 09:  There has already been some serious mishandling of
Appellant Light's Court documents by the Clerk's Office in
the U.S. Court of Appeals, for the Federal Circuit. …........................ 29

Issue # 10:  The herein-described Petition Fee Issue needs to be
resolved by this Court, as a matter of Federal Law,
for the benefit of all other Patent and Trademark
Applicants across the nation. …....................................................... 30

XIII.  Conclusions …......................................................................... 31

XIV.  Request for Oral Argument …................................................... 33

XV.  Relief Sought …........................................................................ 33

XVI. Proof of Service ….................................................................... xxx

viii

# I. LIST OF ILLUSTRATIONS

Illustration # 01:    Trademark in Color …............................................    ix

Illustration # 02:    Trademark in Black-&-White …..............................    x

Illustration # 03:    Sample Color Leaflet, Front Cover,
"Meet Franz & Francine, the Raffrettaloes,
The Very Special Shimmering Rainforest
Giraffes" ................................................................    xi

Illustration # 04:    Sample Color Leaflet, Inside Left Page …...............    xii

Illustration # 05:    Sample Color Leaflet, Inside Right Page …...........    xiii

Illustration # 06:    Sample Color Leaflet, Back Cover, Showing
The Trademark Functioning As Trademark …...........    xiv

ix

## Illustration # 01

## Trademark in Color



x

**Illustration # 02**

**Trademark in Black-&-White**



*Shimmering Rainforest* Character Collection

SHIMMERING WIND-HARP BUTTERFLIES
JALINDA THE WIND-HARP BUTTERFLY
JALISA THE WIND-HARP BUTTERFLY
JAHA THE WIND-HARP BUTTERFLY
JAJA THE WIND-HARP BUTTERFLY
JUMA THE WIND-HARP BUTTERFLY
JELANI THE WIND-HARP BUTTERFLY
RAINYSPARKLE THE RAINFOREST SPARKLEFLY
SWIFTY FLEETFOOT THE LONG-DISTANCE
    RAINFOREST RUNNERBUG
FIONA & FIODOODAD, THE FANCY FIREFLIES
HARRY & HARRIETTA, THE HAIRY RAINFOREST
    SUSPENDER SPIDERS
UMBERTO, THE HAIRY RAINFOREST CATERPILLAR
MAKANI THE KINDHEARTED RAINFOREST MOTH
GILLESPIE THE GREEN FLYING RAINFOREST BUG
TWURPLE THE PURPLE TWIPPADOTTAMO
TWINKLE THE TWINKLY PINK TWIPPADOTTAMO
TWELLOW MELLOWFELLOW THE YELLOW
    TWIPPADOTTAMO
TWORANGE "TWOR" THE ORANGEY ORANGE
    TWIPPADOTTAMO
TWEMERALD THE GREEN AS EMERALDS
    TWIPPADOTTAMO
TWURQ THE TURQUOISE TWIPPADOTTAMO
TWAILOR THE SAILOR TWIPPADOTTAMO
TWASKET THE BASKETBALL TWIPPADOTTAMO
TWOSIE THE ROSY DANCING TWIPPADOTTAMO
TWOW THE "WOW!" TWIPPADOTTAMO
TWOON THE MOONLIGHT-LOVING
    "ASK FOR THE MOON" TWIPPADOTTAMO
TWINKALEE THE HAPPY DANCING PINK
    TWIN TWIPPADOTTAMO
TWINKALOU THE HAPPY DANCING CORAL
    TWIN TWIPPADOTTAMO
TWED "TWEDDY" THE RED TWIPPADOTTAMO,
    WITH HER TEDDY
TWOOIE THE BLUER THAN BLUEY
    TWIPPADOTTAMO
TWEEN THE SPRING GREEN TWIPPADOTTAMO
TWAMBER THE AMBER TWIPPADOTTAMO,
    WITH HER TWABBIT
TWINTER THE BRAVE TWIPPADOTTAMO
TWOLLY THE SILVER WHISTLE-BLOWING
    OLIVE GREEN TWIPPADOTTAMO

VICTORIOUS & VANESSA, THE
    VANAVASITOS (ELEPHANTS)
WAYIIGIL THE VANAVASITO
WAHOO, THE VANAVASITO
WAHEESA, THE VANAVASITO
WATREEKA, THE FEATHEREEKA
EUREEKA, THE FEATHEREEKA
KAPEEKA, THE FEATHEREEKA
UPEEKA, THE FEATHEREEKA
MR. BEE GOOD & MRS. BEE
    KIND, THE RAINFOREST BEES
    WITH OVER 67 BEE CHILDREN,
    INCLUDING BEE WHATEVER,
    BEE A SWEETHEART, & BEE A
    BLESSING TO OTHERS
TWILAC THE LILAC TWIPLET TWIPPADOTTAMO
TWILIGHT THE EVENING SKY TWIPLET
    TWIPPADOTTAMO
TWYING THE "REALLY TRYING" TWIPLET
    TWIPPADOTTAMO
BURPLE & BINKLE THE TWIPPADOTTAMOES
ZURPLE & ZINKLE THE TWIPPADOTTAMOES
GURPLE & GINKLE THE TWIPPADOTTAMOES
BAFFA-DAFFA-DILLY-YAFFA-DELLA-FELLAROOS
BAFFA-DILLY-DOO & DAFFA-DILLY-DOO FELLAROO
BELLA-DOO FELLAROO
DELLA-FELLARULAROO "BIG BLUE" FELLAROO
SKYLIGHT LILY-LEELO-LOU
SUNLIGHT LILY-LEELO-LOU
LISTENUP RUNFAST BUNNYRABBIT
LISTENWELL RUNWELL BUNNYRABBIT
PLEASELISTEN BUNNYRABBIT
LISTENMORE BUNNYRABBIT
LISTENTOWHAT BUNNYRABBIT
LISTENTOTHIS BUNNYRABBIT
LISTENTOTHAT BUNNYRABBIT
LISTENTOWHOM BUNNYRABBIT
LISTENWHENEVERPOSSIBLE BUNNYRABBIT
LISTENTOYOU BUNNYRABBIT
LISTENTOMETOO BUNNYRABBIT
SOGGY THE RAINFOREST FROGGY
MAJESTIC THE ELEGANT,
    MANY-ANTLERED ADORADEER
PRINCESS THE ELEGANT ADORADEER
ROYAL "ROY" THE BABY ELEGANT ADORADEER
TUFFY & FLUFFY THE SQUAFFAHOOS
SOFTLY & SWEETLY THE SQUAFFAHOOS
SAINTLY & SMOOTHLY THE SQUAFFAHOOS
SERENELY & SPARKLINGLY THE SQUAFFAHOOS
SHERISSA THE BIRD WITH A THOUSAND FEATHERS
DARIA THE BIRD WITH A THOUSAND FEATHERS
ZARIA THE BIRD WITH A THOUSAND FEATHERS
ICAN SO-YOUCAN-TOO, THE TOUCAN, ALSO
    KNOWN AS THE RAINFOREST SASHADINKADOE
BAKARI & BARIKA THE STREAMING
    SUNLIGHT RAINFOREST BIRDS
AYOKA THE FLUFFA-FAFFAFOO
FRANZ & FRANCINE THE RAFFRETTALOES
LOFTY THE BABY RAFFRETTALO

FAITH THE THERE-WHEN-YOU-NEED-HER
    UNICORN WHO SHINES WITH HIGH IDEALS
SUZANNA SAVANNAH
EMERALDGLOW O'SHANNON
MEI-LING SPRING BLOSSOM HUANG
GLORIOUS GLORIETTA GLISSANDO
ADORIOUS ADORIETTA GLISSANDO
ROSEMARIE RAINY RAINWATER
SOLOMON THOUGHTFULLY WISEBERG
BEAU TWINKLE-IN-HIS-EYES FORTHRIGHT
MELODIOUS MELODY DAZZLING
ADORING ISADORA AMORA
ASHLEY LASHANO O'SHANNON
SHIMMER SHIMMERINA O'SHANNON
APOLLO BRILLIANT
AMETHYST DIAMOND BRILLIANT
AKIIKI MUDADA
ZIGFRID R. ZANY
JASON DEFINITELY COURAGEOUS
CHARMIAN, CHARLES & CHERISE
    THE CHERISHIOBASHOES
LASHANA & LASHANO
    THE SKY-BLUE WARBLEROOS
RUNAKO, RASHEA & RASHITA
    THE RED WARBLEROOS
HASANO, HALILA & HALITA
    THE ROSY WARBLEROOS
YAKONO, YAKARA & YASHIA & YAKIA
    THE YELLOW WARBLEROOS
DAKARAI, DAKELI & DALILA
    THE SAPPHIRE BLUE WARBLEROOS
PAWANO, PARESSA, PAPITA & PARINA
    THE PURPLE WARBLEROOS
OBIWA, OJERA, OTIKA & OTINA
    THE ORANGE WARBLEROOS
TIARA, THE RAINFOREST JEWELBIRD
RAINBOW MIST THE ZABBRA-DABBRA ZEBRA
BIZZLE-BOOS, BIZZLE-LOOS & DIZZLE-DOOS
DIZZLE-LOOS, FIZZLE-FOOS & FIZZLE-LOOS
GIZZLE-GOOS & GOO-GOO-HOO-HOOS
HA-HO-HOOS & HA-HA-HO-HOOS
HA-HA-HO-HO-HOO-HOO HOOS
HIZZLE-DIZZLE-TWIZZLES & HIZZLE-FIZZLES
HIZZLE-HOOS & HIZZLE-LOOS
KIZZLE-KOO-LOOS & KWIZZLE-KWOOS
KWIZZLE-KWOO-LOO-DOOS & ZIZZLE-ZOOS
FIZZLE-DIZZLE-KIZZLE-KOO-LOOS
MIZZLE-MOOS & MIZZLE-LOOS
MIZZLE-DIZZLES & NIZZLE-NOO-LOO-DOOS
QUIZZLE-QUOOS & NIZZLE ROO-LOOS
TIZZLE-DIZZLES & TWIZZLE-DIZZLE-ZIZZLES
TWIZZLE-TIZZLES & ZIZZLE-ZAZZLE-DAZZLES
TWIZZLE-DIZZLE-FIZZLE & TIZZLE-GIZZLE-
    MIZZLE-BIZZLE-ZIZZLE-ZAZZLES
TIZZLE-DIZZLES & TWIZZLE-ZAZZLES
TWIZZLE-ZIZZLES & WIZZLE-WOOS
WOO-HOO-HA-HOOS
WOO-HOO-YOO-TOOS
YOO-HOO-HOO-TOOS

xi



xii



xiii



xiv



Be sure to look for this unique *Shimmering Rainforest* Trademark,
above,  to assure you that you have publications & products
with the genuine, original
*Shimmering Rainforest* Characters,
rather than knock-offs or plagiarized versions of them!
This beautiful family of characters appears in leaflets, booklets, books
and a wide variety  of popular publications,
to delight you, entertain you, inform you, and inspire  you!
We are happy to have the privilege of serving you!
May God bless you and peace be with you!
Om Shanthi, Om Peace!
-- Prema Jyothi Light

© 2000, Prema Jyothi Light

xv

## II.    TABLE OF AUTHORITIES

### Cases

*In re Data Packaging Corp.*, 453 F.2d 1300, 1302,
     *172 USPQ 396, 397 (C.C.P.A. 1972)* ........................................................ 22
*In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341 (2001),
     *U.S. Court of Appeals, Federal Circuit* ................................................. 16
*In re Innovative Companies*, USPQ2D (TTAB 2008) ........................................ 27
*In re Seats, Inc., 757 F.2d 274 (1985)*
     *U.S. Court of Appeals, Federal Circuit* ................................................. 15
*Paris Glove of Canada, Ltd. v. SBC/Sportco Corp.*, 84 USPQ2d 1856,
     1862 (TTAB 2007) ................................................................................ 28
*In re Larios*, 35 USPQ2d 1214 (TTAB 1995) ..................................................... 27

### TMEP

TMEP § 714.03 ....................................................................................... 17
TMEP § 714.05(a) ........................................................................... iii, xxv, 17, 18
TMEP § 807 ............................................................................................ 22
TMEP § 807.14(e)(i) ........................................................................ iv, 18, 21, 22
TMEP § 807.14(e)(ii) ............................................................................. 22
TMEP § 904.07(b) .................................................................................. 20
TMEP § 1213.05 .......................................................................... vii, 21, 29

### Federal Law

37 C.F.R. § 2.6 (a) (15) ................................................................................ 30
37 C.F.R. § 2.27 ...................................................................................... 13
F.R.A.P. Rule 24 (5)(c) ........................................................................ xvii, 1, 2
15 U.S.C. §1052 (f) ..................................................................iii, xx, 3, 4,14,15
15 U.S.C. § 1071(a)(1) ............................................................................. 2
15 U.S.C. § 1071(a)(4) ............................................................................. 9

xvi

## III.    <u>CERTIFICATE OF COMPLIANCE</u>

1. In compliance with Federal Rule of Appellate Procedure 32(a)(7)(B), this

   APPELLANT'S BRIEF contains 13,267 words, excluding the parts of the

   BRIEF exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This BRIEF complies with the typeface requirements of Federal Rule of

   Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

   Appellate Procedure 32(a)(6).  This BRIEF has been prepared on computer, in a

   proportionally spaced, 14-point computer typeface.

Dated:  January 11, 2015          Respectfully submitted,

                                  _P. Light_
                                  Prema Jyothi Light
                                  Appellant, <u>pro se</u>

xvii

## IV.  TABLES OF DOCUMENTS IN THE USPTO ORIGINAL RECORD
### For The Trademark
### SHIMMERING RAINFOREST
### With Alphanumeric Codes for Easy Reference

**A.**    **How to use these Tables**:

The Original Record is available Online at: www.uspto.gov; click on TSDR icon; enter the Serial # for the Trademark Applications, which are: 76293327 for SHIMMERING RAINFOREST, or 76293326 for SHIMMERING BALLERINAS & DANCERS.  This brings you to a page with three relevant sections:  Status; Pre-TTAB Trademark Documents; and TTAB "Proceedings" Documents (just after the end of the Trademark Documents list.)  The following Tables use the same document numbers that the USPTO uses, as of this writing, and also the same USPTO document titles and filing dates.

However, many documents have been given titles by the USPTO which are inaccurate, vague, non-comprehensive, controversial, or adversarial.  In the lists below, these titles are usually placed in quotations, with a more accurate or complete title following in parentheses, for example, "Email Incoming" (Response to Office Action), or "Applicant Exhibits" (Exhibit J to Appeal Brief). This makes it easier and faster to find whatever you may be looking for, as you don't have to click open a document to find out the contents.  If needed, the title is lightly annotated.  This is easier to use, and more accurate, than the Joint Appendix Table of Contents.

**B.**    **Alphanumeric Code for Documents as Referenced in these Tables**:

SR = SHIMMERING RAINFOREST; SB = SHIMMERING BALLERINAS & DANCERS, for the sister Trademark simultaneously filed; TMDOC = Pre-TTAB Documents; TTAB = Appeal Documents within the USPTO; and the same USPTO Document Numbers; for example, SR-TMDOC-034, or SR-TTAB-075.

**C.**    **Why these Tables are Necessary**:

Appellant Light, as an IFP litigant, is asking that this Case be heard on the Original Record, in accordance with F.R.A.P. Rule 24 (5)(c), instead of collaborating on a Joint Appendix.  Other reasons are detailed further in this BRIEF.

xviii

## D.    Trademark Documents (Pre-TTAB)

2014-04-07 Petition Decision …........................................................ SR-TMDOC-001

2014-03-17 Change of Address …...................................................... SR-TMDOC-002

2014-03-17 "Preliminary Amendment" (Request for
    Reinstatement of Petition) …..................................................... SR-TMDOC-003

2014-03-11 Petition Decision …......................................................... SR-TMDOC-004

2014-02-13 "Petition to Director Received" (Petition to Director) .... SR-TMDOC-005

2013-12-17 Administrative Response …............................................. SR-TMDOC-006

2013-08-05 "Office Action Outgoing" (mis-titled – this is the
    Examining Attorney's Appeal Brief to TTAB) .......................... SR-TMDOC-007

2013-03-09 "Ofc Action Outgoing" (this is the Examining
    Attorney's disputed Final Office Action [FOA]) …................... SR-TMDOC-008

2013-03-09 XSearch Search Summary …........................................... SR-TMDOC-009

2013-03-09 "Amendment & Mail Process Complete" (a long
    Status document with "prosecution history") …........................ SR-TMDOC-010

2013-03-08 "Notice of Revive Application" (Notice of Revival) ....... SR-TMDOC-011

2013-03-04 "Response to Petition Deficiency Inquiry" (mis-titled -
    this is Applicant's Response to Notice of Deficiency, with attached
    Petition To Revive, Response to Office Action, & Vanavasitos
    (Elephant) full-color Specimen, which should have had its own
    separate document listing, though it was sent in at the same time,
    in support of Trademark, with payment of the disputed additional,
    second $100 Petition Fee for the single Petition) …................... SR-TMDOC-012

2013-02-19 "Paper Correspondence Outgoing" (Two $100 Fees
    required for single Petition) …..................................…............. SR-TMDOC-013

2013-02-07 "Petition to Revive Notice of Deficiency" (mis-titled -
    this is Applicant's Response to Notice of Deficiency, looks
    blurry, but attached original pdf is crisp) …................................ SR-TMDOC-014

2013-02-07 Petition to Revive Notice of Deficiency (second letter
    from USPTO in response to protest on Fee issue) …................... SR-TMDOC-015

2013-02-06 Notation To File (re USPTO decision to charge
    second $100 Petition Fee for single Petition) …......................... SR-TMDOC-016

2013-02-06 Petition to Revive Notice of Deficiency (USPTO
    ultimatum on second Petition Fee) …......................................... SR-TMDOC-017

2013-02-05 "Request for Reinstatement Received" (Request for
    Reinstatement, blurry uploads as first document, but the
    links to original pdfs are all to crisp documents) …................... SR-TMDOC-018

2013-02-05 (duplicate of Request for Reinstatement Received) …...... SR-TMDOC-019

## D. **Trademark Documents (Pre-TTAB)** *(continued)*

2013-01-28 "TEAS Petition To Revive Abandoned Applic" (Petition
to Revive Application, which was never really abandoned, ROA
just arrived via TEAS a few minutes after midnight, East Coast
time, though on time in Colorado, click on link to original pdfs
for crisp copies, otherwise blurry uploads by USPTO............... SR-TMDOC-020

2012-11-28 "Office Action Outgoing" (Notice that Application
was deemed abandoned because response was untimely) ........ SR-TMDOC-021

2012-11-28 Amendment & Mail Process Complete ........................... SR-TMDOC-022

2012-11-27 Response to Office Action (blurry upload by USPTO,
but click on original pdf link, under"evidence", for crisp copy
of ROA as filed)...................................................................... SR-TMDOC-023

2012-06-12 Amendment & Mail Process Complete ......................... SR-TMDOC-024

2012-06-11 Office Action Outgoing (EA Response to Request for
Extension of Time due to USPTO website error)...................... SR-TMDOC-025

2012-05-29 "Preliminary Amendment" (Request for Extension of
Time Due to USPTO [website] Error)....................................... SR-TMDOC-026

2012-05-26 Office Action Outgoing ..................................................... SR-TMDOC-027

2012-05-01 Amendment & Mail Process Complete ......................... SR-TMDOC-028

2012-04-28 Notation To File (a notation to file is not a response to
the Applicant, so the EA "processed" Applicant's protest
without ever responding to it)................................................. SR-TMDOC-029

2012-04-27 Notation to File (same objection) ................................... SR-TMDOC-030

2012-04-25 "Preliminary Amendment" (Protest from Applicant –
the "Amended Drawing" newly placed on the Record, dated
2012-04-17, by a new Examining Attorney is a blurry and
skewed copy of the Original Drawing, not an "Amended
Drawing") ............................................................................... SR-TMDOC-031

2012-04-17 "Amended Drawing" (mis-titled – this is the
Original Drawing, but a blurry and skewed copy of it) ............ SR-TMDOC-032

2012-03-30 Amendment & Mail Process Complete ......................... SR-TMDOC-033

2012-03-29 "Response To Office Action" (Response to Office
Action & Request for Supplemental Office Action in response
to New Issue, of Claim of Acquired Distinctiveness, uploaded
as blurry by USPTO, but link to original pdf gives you a
crisp copy) ............................................................................. SR-TMDOC-034

xx

### D.  Trademark Documents (Pre-TTAB) *(continued)*

2011-09-29 Office Action Outgoing [after Remand to Examining
    Attorney Gast (EA) by TTAB Order on 2011-08-08
    (SR-TTAB-041), because EA failed to issue a Non-Final
    Office Action in response to a New Issue (15 U.S.C. §1052(f)
    Claim of Acquired Distinctiveness), as required by
    TMEP § 715.04(b) & § 1212.02(h))] ........................................ SR-TMDOC-035
2011-09-20 Change of Correspondence Address .............................. SR-TMDOC-036
2011-09-08 Change of Correspondence Address .............................. SR-TMDOC-037
2011-09-07 Change of Correspondence Address .............................. SR-TMDOC-038
2011-08-25 Change of Correspondence Address .............................. SR-TMDOC-039
2011-08-25 TEAS Change of Owner Address .................................. SR-TMDOC-040
2011-08-25 Change of Correspondence Address .............................. SR-TMDOC-041
2011-06-20 Change of Correspondence Address .............................. SR-TMDOC-042
2010-09-27 Change of Correspondence Address .............................. SR-TMDOC-043
2010-01-28 "Reconsideration Letter" (Request for
    Reconsideration Denied by Examining Attorney).................. SR-TMDOC-044
2009-12-17 Amendment & Mail Process Complete ......................... SR-TMDOC-045
2009-12-15 Request for Consideration After Final Office Action,
    (citing Claim for Acquired Distinctiveness, as well as
    Inherent Distinctiveness) ........................................................ SR-TMDOC-046
2009-12-15 TEAS Change of Owner Address .................................. SR-TMDOC-047
2009-12-15 Change of Owner Address ............................................. SR-TMDOC-048
2009-06-15 "Office Action Outgoing" (Final Office Action) ............ SR-TMDOC-049
2009-03-13 Amendment & Mail Process Complete ......................... SR-TMDOC-050
2009-03-12 Notice of Revival of Application .................................... SR-TMDOC-051
2009-03-12 Petition To Revive Application (uploaded by USPTO as
    blurry, click on link to original pdf for crisp copy) with ROA... SR-TMDOC-052
2009-02-19 Change of Correspondence Address .............................. SR-TMDOC-053
2009-01-12 Notation To File ........................................................... SR-TMDOC-054
2009-01-12 Office Action Outgoing (Application deemed
    abandoned, as ROA was half an hour late by Mountain Time in
    Colorado; Petition to Director necessary to "un-abandon" it) .. SR-TMDOC-055
2008-12-18 Amendment & Mail Process Complete ......................... SR-TMDOC-056
2008-12-16 Response to Office Action (TM in Standard Character
    Format version offered in response to EA's Office Action) ...... SR-TMDOC-057
2008-12-16 Specimen (Mis-titled – this is just a note from
    Applicant in TEAS that Specimens were mailed to USPTO --
    they later claimed that they "lost" the whole box) .................. SR-TMDOC-058

### D. <u>Trademark Documents (Pre-TTAB)</u> *(continued)*

2008-12-09 Change of Correspondence Address ............................... SR-TMDOC-059
2008-06-14 Office Action Outgoing (EA suggests that TM in
  standard character format might be acceptable)........................ SR-TMDOC-060
2008-06-12 TEAS Change of Owner's Address ................................ SR-TMDOC-061
2008-06-12 Change of Correspondence Address .............................. SR-TMDOC-062
2008-01-14 Office Action Outgoing (this is the EA's Appeal Brief to
  the TTAB, as the Case was bouncing back and forth between
  the EA (on Remand from the Board) and the TTAB. This document
  is the same as SR-TTAB-076. The EA complains that Applicant's
  Brief was over 25 pages, but it was only 25 pages long – see
  SR-TTAB-099; why is the EA's Appeal Brief listed in the Record
  here, but not Applicant's Appeal Brief? Both are also in the
  TTAB Proceedings section of the Records.) ............................. SR-TMDOC-063
2006 03-13 XSearch Summary ............................................... SR-TMDOC-064
2006-03-09 Notice of Revival of Application .................................... SR-TMDOC-065
2006-03-08 Incoming Fax (payment of Petition & Appeal fees;
  made blurry by USPTO, orig was crisp) ................................. SR-TMDOC-066
2006-02-09 Petition to Revive Notice of Deficiency (demand
  for Petition & Appeal fees) ..................................................... SB-TMDOC-067
2006-01-26 Incoming Fax (Two Certificates of Fax Transmission,
  as requested, but made blurry by USPTO, origs was crisp......... SR-TMDOC-068
2005-12-29 Petition to Revive Deficiency ....................................... SR-TMDOC-069
2005-09-23 Paper Correspondence Incoming (Petitions to
  Revive for both SHIMMERING RAINFOREST &
  SHIMMERING BALLERINAS & DANCERS) ...................... SR-TMDOC-070
2005-01-19 Office Action Outgoing ................................................ SR-TMDOC-071
2004-10-01 Response to Office Action ............................................ SR-TMDOC-072
2004-10-01 Change of Address ......................................................... SR-TMDOC-073
2004-07-31 Examiners Amendment (rejected by Applicant;
  EA misunderstood Applicant's views) ................................... SR-TMDOC-074
2004-02-10 XSearch Summary ........................................................ SR-TMDOC-075
2004-02-10 File Jacket (unclear why this is included in Record)........ SR-TMDOC-076
2004-02-10 "Specimen" (the 12 missing pages of a longer
  Specimen, the Triple-Shimmering Playbook, are here now;
  but the cover is not shown here, so most people would not know
  where these pages came from; the additions are appreciated, but
  in the same Record, downloaded on 2013-06-10, one and a half
  years ago, more pages of this Specimen were uploaded here, so

xxii

### D. <u>Trademark Documents (Pre-TTAB)</u> *(continued)*

since then, someone on the USPTO staff has <u>removed</u> 86 pages
of this Specimen; Appellant still has this older download.
Solution: see SR-TTAB-004 for the complete Playbook, all in
one place.) .................................................................................. SR-TMDOC-077

2004-02-10 "Specimen" (a few pages of Specimens, not complete,
unclear where the green pages came from, no green pages were
ever filed; a few more pages of the Playbook Specimen scanned
in, at least in color instead of blackened; still not complete.
Solution: see SR-TTAB-004 for the complete Playbook, all in
one place.) ................................................................................ SR-TMDOC-078

2004-02-09 "Amended Drawing" (mis-titled – this was a possible
Substitute Drawing, not an Amended Drawing, same elements
in a radial format) ..................................................................... SR-TMDOC-079

2004-02-09 "Email Incoming" (Response to Office Action [ROA]).. SR-TMDOC-080

2004-02-07 "Email Incoming" [duplicate Response to Office Action
(ROA) with USPTO-added page headers, contents falling on
different pages as a result] ......................................................... SR-TMDOC-081

2003-08-08 Office Action Outgoing ..................................................... SR-TMDOC-082

2003-08-06 Office Action Outgoing (duplicate, same thing) .............. SR-TMDOC-083

2003-03-07 "Email Incoming" (Response to Office Action) .............. SR-TMDOC-084

2003-03-06 "Email Incoming" (Response to Office Action, duplicate,
with useful page-numbered headers added by USPTO) .......... SR-TMDOC-085

2003-02-14 "Office Action Outgoing" (Final Office Action) ........... SR-TMDOC-086

2003-02-10 "Office Action Outgoing" (Final Office Action,
duplicate and mis-dated – if the other was 2003-02-14, this
one is too, is the same thing without a date stamped on it) ....... SR-TMDOC-087

2003-02-10 2002-12-31 "Response to Office Action" (mis-titled –
this is a Request for Extension of Time to Respond; also
mis-dated – it is stamped received on 2002-12-31, but was sent
by Express Mail, next-day delivery, on 2002-12-04, and so
stamped by U.S. Post Office, Charlottesville, VA) ................... SR-TMDOC-088

2002-12-05 "Paper Correspondence Incoming" (same document as
Request for Extension of Time, above).................................... SR-TMDOC-089

2002-06-26 Priority Action ................................................................. SR-TMDOC-090

2001-08-03 Unclassified - Other (This is a routing record of Petition
to Restore [Original]Filing Date, Petition not attached) ........... SR-TMDOC-091

xxiii

## D.  Trademark Documents (Pre-TTAB) *(continued)*

2001-07-31 "Duplicate Application" (see further in this BRIEF, for
explanation of why this Application had to be refiled on
2001-07-31, after having been first filed on 2001-07-09) ......... SR-TMDOC-092

2001-07-09 "Drawing Original Restored" - (Incorrect – this is NOT
the Original Drawing, which was a Design Mark – there was
only ONE Original Drawing, not two.  The Standard Character
version was wrongly thrown into the beginning of the Record in
2012, by a new Examining Attorney, taken from another
document (SR-TMDOC-057) first filed on 2009-12-16, which
was rejected by the other EA, and then dropped by Applicant... SR-TMDOC-093

2001-07-09 "Application" (does not contain the whole Application –
the beautifully prepared original Application materials, with colorful
Specimens, interleafed with gold-stamped letterhead title pages,
was plundered, dismembered, badly uploaded by USPTO staff as
blurry, skewed and blackened, taken out of order, and pieces
randomly ditched, by USPTO staff – see SR-TTAB- for better
uploads of some of the Specimens, at least) ............................ SR-TMDOC-094

2001-07-09 "Drawing" (The first page has the Original Drawing Page
for this Design Mark; the Standard Character version is not an
original Drawing Page; placing it at the beginning of the Record
was an "EIGHT YEARS OFF" mistake by the new EA, after
the previous EA retired.  The Standard Character version of this
Trademark was first offered as an alternate Drawing almost eight
years after the original filing of the Application.) ...................... SR-TMDOC-095

2001-07-09 "Specimen" (several colorful Specimens were blackened
almost beyond recognition, in uploading here by USPTO staff) SR-TMDOC-096

## E.  TTAB "PROCEEDINGS" DOCUMENTS

(Please note:  The sequence of documents is not as it seems, as the Case
bounced back and forth from the Trademark Examining Attorneys to the
TTAB four times, during over twelve years, and the TTAB Proceedings
documents are all run together here, as they are in the TSDR Online Records.)

2014-05-13 Appeal to CAFC (Notice of Appeal) ............................ SR-TTAB-001
2014-03-26 Extension of Time to Appeal Granted ........................... SR-TTAB-002
2013-12-13 Board Decision - Affirmed (Final Order) ..................... SR-TTAB-003

xxiv

## E. **TTAB "Proceedings" Documents** *(continued)*

2013-10-14 "Applicant Communication" (pdf #01 in Support of
MOTION FOR CORRECTIONS TO THE RECORD
dated 2013-10-08, complete & corrected copy
of the Specimen titled (short title) The Triple-Shimmering
"Have Fun Playbook & Storybook" for Children) ................. SR-TTAB-004

2013-10-14 "Applicant Communication" (Motion to Correct Inadvertent
Error in Playbook, an Exhibit in support of MOTION FOR
CORRECTIONS TO THE RECORD dated 2013-10-08) ........ SR-TTAB-005

2013-10-08 "Applicant Communication" (pdf #03 in Support of
MOTION FOR CORRECTIONS TO THE RECORD,
Cover Sheet in color for Specimen #1) ................................... SR-TTAB-006

2012-10-08 "Applicant Req To Ext" (pdf #02 in Support of MOTION
FOR CORRECTIONS TO RECORD, Request for Extension
of Time [to respond to Office Action] Due to USPTO [website]
Error) ................................................................................... SR-TTAB-007

2013-10-08 "Applicant Exhibits" (just a blank page saying "The
image for this record can not be displayed at this time.) (But
pdf #04 in Support of MOTION FOR CORRECTIONS TO
THE RECORD, Request for Reconsideration, is missing) .......SR-TTAB-008

2013-10-08 "Applicant Communication" (Appellant's MOTION
FOR CORRECTIONS TO THE RECORD) ............................ SR-TTAB-009

2013-10-08 Change of Corresp Address ........................................... SR-TTAB-010

2013-09-06 "Submitted On Brief" (just a blank page saying,
"There is no image for this record.") ...................................... SR-TTAB-011

2013-08-23 "Memo Forwarding Reply Brief" (memo from Technical
Program Manager to EA, forwarding REPLY BRIEF) ............ SR-TTAB-012

2013-08-23 "Reply Brief" (Appellant's REPLY BRIEF) .................... SR-TTAB-013

2013-08-05 "Examiner's Statement" (EA's Appeal Brief) ................. SR-TTAB-014

2013-06-22 "Applicant Exhibits" (Exhibit K to Appeal Brief,
refiled with page numbers) ..................................................... SR-TTAB-015

2013-06-22 "Applicant Exhibits" (Exhibit J to Appeal Brief,
refiled with page numbers) ..................................................... SR-TTAB-016

2013-06-22 "Applicant Exhibits" (Further Corrections to
Exhibit List for Appeal Brief) ................................................ SR-TTAB-017

2013-06-21 "Applicant Exhibits" (Exhibit O to Appeal Brief) .......... SR-TTAB-018

2013-06-21 "Applicant Exhibits" (Exhibit N to Appeal Brief) .......... SR-TTAB-019

2013-06-21 "Applicant Exhibits" (Exhibit M to Appeal Brief).......... SR-TTAB-020

2013-06-21 "Applicant Exhibits" (Exhibit L to Appeal Brief) ......... SR-TTAB-021

xxv

## E.  TTAB "Proceedings" Documents *(continued)*

2013-06-12 "Applicant Exhibits" (Exhibit K to Appeal Brief) ….…...  SR-TTAB-022

2013-06-12 "Applicant Exhibits" (Exhibit J to Appeal Brief) ….…...  SR-TTAB-023

2013-06-12 "Appeal Brief" (mis-titled, this is just typographical
    Corrections to Appeal Brief; the Brief itself is SR-TTAB-034)  SR-TTAB-024

2013-06-12 "Appeal Forwarded to Examiner for Brief" (memo from
    Technical Program Manager to EA, forwarding Appellant's
    Appeal Brief) ….…................................................................  SR-TTAB-025

2013-06-11 "Applicant Exhibits" (Exhibit H to Appeal Brief) ….…...  SR-TTAB-026

2013-06-11 "Applicant Exhibits" (Exhibit G to Appeal Brief) ….…...  SR-TTAB-027

2013-06-11 "Applicant Exhibits" (Exhibit F to Appeal Brief) ….…...  SR-TTAB-028

2013-06-11 "Applicant Exhibits" (Exhibit E to Appeal Brief) ….…...  SR-TTAB-029

2013-06-11 "Applicant Exhibits" (Exhibit D to Appeal Brief) ….…...  SR-TTAB-030

2013-06-11 "Applicant Exhibits" (Exhibit C to Appeal Brief) ….…...  SR-TTAB-031

2013-06-11 "Applicant Exhibits" (Exhibit B to Appeal Brief) ….…...  SR-TTAB-032

2013-06-11 "Applicant Exhibits" (Exhibit A to Appeal Brief) ….…...  SR-TTAB-033

2013-06-04 Appeal Brief (Applicant's Appeal Brief) …......................  SR-TTAB-034

2013-04-05 "Proceedings Resumed" (TTAB refusal to Remand for
    consideration of New Issues, including registration of Mark
    in color & correction of typographical errors) …........................  SR-TTAB-035

2013-03-28 "Applicant Req For Remand" [Request for Remand to EA
    for Non-Final Office Action in response to New Issues, as
    required by TMEP § 714.05(a)]…..........................................  SR-TTAB-036

2013-03-21 "Proceedings Resumed" (memo from Technical Program
    Manager, conveying TTAB decision for resumption of Appeal
    in response to EA's Final Office Action dated 2013-03-09,
    though this should have been a Non-Final Office Action) ….....  SR-TTAB-037

2013-03-09 "Recon Denied" (This is the Examining Attorney's
    disputed Final Office Action [FOA] ) …................................  SR-TTAB-038

2012-11-28 "Terminated" (just a blank page saying,  "There is no
    image for this Record.) ….........................................................  SR-TTAB-039

2011-08-25 Change of Correspondence Address ….........................  SR-TTAB-040

2011-08-08 Remanded To Examiner (remanded for Non-Final
    Office Action in response to New Issue) …..............................  SR-TTAB-041

2011-07-26 Change of Correspondence Address …...........................  SR-TTAB-042

2011-07-16 Change of Correspondence Address …...........................  SR-TTAB-043

2011-07-06 Change of Correspondence Address …...........................  SR-TTAB-044

2011-06-09 Change of Correspondence Address …...........................  SR-TTAB-045

xxvi

## E. TTAB "Proceedings" Documents (continued)

2011-06-08 "Applicant's Request For Remand" (Request for Remand
    to EA for Non-Final Office Action in response to New Issue)   SR-TTAB-046
2011-06-08 "Applicant's Communication" (Applicant notes quick
    correction of TMEP violations by USPTO) ............................ SR-TTAB-047
2011-06-07 "Applicant's Communication" (Confirmation of
    Documents Filed 2011-06-06) ............................................... SR-TTAB-048
2011-06-06 "Applicant's Motion To Suspend" (mis-titled – this is
    (REFILED) REQUEST FOR RECONSIDERATION) ............ SR-TTAB-049
2011-06-06 "Applicant's Communication" (Request for Correction
    of TMEP Violations) .............................................................. SR-TTAB-050
2011-06-06 "Applicant's Motion to Suspend" (mis-titled – this is a
    RESPONSE TO ORDER & REQUEST FOR FURTHER STAY
    IN PROCEEDINGS) .................................................................. SR-TTAB-051
2011-06-06 Change of Correspondence Address ................................ SR-TTAB-052
2011-03-04 Response Due .................................................................. SR-TTAB-053
2011-03-04 "Applicant's Communication" (Response to Order &
    Request for Stay) .................................................................... SR-TTAB-054
2011-03-02 Response Due ................................................................. SR-TTAB-055
2011-01-10 Applicant's Request For Remand (requesting Remand to
    EA for Non-Final Office Action in response to New Issue of
    Acquired Distinctiveness)....................................................... SR-TTAB-056
2010-11-09 "Brief Due" (Note:  the Board says it is ordering that the
    two Cases be consolidated, but this is not legally possible because
    the two Cases are still separate Cases, Trademarks & separately-paid
    Applications; Applicant had just requested simultaneous due dates
    & deadlines so the two Cases could run in tandem.) ............... SR-TTAB-057
2010-09-27 "Applicant's Request To Extend" (Request for Setting New
    Due Date Due to Wildfire Disaster Emergencies in Colorado, &
    Request for Synchronized Due Dates & Parallel Handling for
    the Two Sister Trademarks, SHIMMERING RAINFOREST &
    SHIMMERING BALLERINAS & DANCERS) .................... SR-TTAB-058
2010-09-27 Change of Correspondence Address ............................. SR-TTAB-059
2010-06-21 Applicant's Request To Extend ..................................... SR-TTAB-060
2010-05-10 Brief Due .................................................................... SR-TTAB-061
2010-04-15 "Remanded To Examiner" (Request for Remand
    Granted for Good Cause Shown) ......................................... SR-TTAB-062
2010-01-28 "Reconsideration Denied" (this is a document from the
    EA, not TTAB Proceedings, and not in proper date order) ..... SR-TTAB-063

xxvii

## E.  **TTAB "Proceedings" Documents** *(continued)*

2010-02-08 "Applicant's Request For Remand"
    (Amended Request for Further Remand) ............................... SR-TTAB-064
2010-02-08 "Applicant's Request For Remand"
    (Request for Further Remand) ................................................ SR-TTAB-065
2010-01-07 Remanded To Examiner (another Remand to the EA
    from the TTAB) ....................................................................... SR-TTAB-066
2009-12-15 "Appeal To Board" (Notice of Appeal to New Final
    Action) .................................................................................... SR-TTAB-067
2009-12-15 Change of Correspondence Address ............................. SR-TTAB-068
2009-01-12 "Terminated" (just blank page saying, "There is no
    image for this record.") ......................................................... SR-TTAB-069
2008-06-10 Change of Correspondence Address ............................. SR-TTAB-070
2008-05-16 Remanded To Examiner (Remand to EA by Order of
    the TTAB Judges, on their own initiative) .............................. SR-TTAB-071
2008-04-04 "Submitted On Brief" (just a blank page saying,
    "There is no image for this record.) ....................................... SR-TTAB-072
2008-02-15 "Memo Forwarding Reply Brief" (memo from TTAB
    paralegal to EA, offering him 3 days to review Appellant's
    Reply Brief & notify the TTAB if he was changing his mind
    and allowing registration of this Trademark) .......................... SR-TTAB-073
2008-02-15 Board's Order (accepting Reply Brief even though
    filed one day late) .................................................................. SR-TTAB-074
2008-02-05 "Reply Brief" (Appellant's Response to Examiner's
    Statement) .............................................................................. SR-TTAB-075
2008-01-14 Examiner's Statement (Examining Attorney's
    Appeal Brief) .......................................................................... SR-TTAB-076
2007-11-28 "Board's Order" (this is just a notification that the
    earlier denial of Appellant's request for extension of time,
    though signed by a paralegal, had been made by Board
    judges who had just remained anonymous) ............................. SR-TTAB-077
2007-11-26 "Request For Reconsideration" (Appellant's request
    that the denial of her Request Citing Special Circumstances
    be made by TTAB judges rather than just a paralegal) ............ SR-TTAB-078
2007-11-16 "Appeal Forwarded To Examiner For Brief" (notice
    from TTAB paralegal that Appellant's request for extension
    of time to file exhibits was denied) ........................................ SR-TTAB-079
2007-11-15 "Applicant's Request To Extend" (Request
    Citing Special Circumstances) ............................................... SR-TTAB-080

## E.  TTAB "Proceedings" Documents *(continued)*

2007-08-13 "Response Due" (request for extension of time granted)  SR-TTAB-081
2007-08-09 Applicant's Request To Extend …..................................... SR-TTAB-082
2007-08-09 Change of Correspondence Address …............................. SR-TTAB-083
2007-08-09 Change of Correspondence Address …............................. SR-TTAB-084
2007-06-07 Response Due (request for extension of time granted)... SR-TTAB-085
2007-05-31 Applicant's Request To Extend …..................................... SR-TTAB-086
2007-04-13 Response Due (request for extension of time granted) ... SR-TTAB-087
2007-04-13 Applicant's Request To Extend …..................................... SR-TTAB-088
2007-02-28 Response Due (request for extension of time granted)... SR-TTAB-089
2007-02-26 "Applicant's Request To Extend" (Amendment to
         Request for Extension of Time) …........................................ SR-TTAB-090
2007-02-26 "Applicant's Request To Extend" (duplicate of
         Amendment to Request for Extension of Time) …................. SR-TTAB-091
2007-02-16 Response Due (request for extension of time granted)... SR-TTAB-092
2007-02-06 Applicant's Request To Extend …..................................... SR-TTAB-093
2006-08-28 Proceedings Resumed (request for extension of
         time granted)…........................................................................ SR-TTAB-094
2006-08-21 Applicant's Request To Extend (query about box of
         color Specimens "lost" within the USPTO) …........................... SR-TTAB-095
2006-08-09 Appeal Forwarded To Examiner For Brief (explanation
         for late Briefs accepted, and Appeal Briefs forwarded to EA
         for his review and response) ….................................…............. SR-TTAB-096
2006-06-28 "Applicant's Communication" (hand-written
         explanation for late filing of Appeal Briefs) …........................ SR-TTAB-097
2006-06-13 Response Due (request to explain late filing of Brief )... SR-TTAB-098
2006-05-30 "Appeal Brief" (Applicant's Appeal Brief) ….................... SR-TTAB-099
2006-03-24 Proceedings Resumed (since Petition to Revive has
         been granted, due date set for Appeal Brief) …..................... SR-TTAB-100
2006-03-09 "Applicant's Communication" (mis-titled – this is the
         Notice of Revival to Applicant) …............................................ SR-TTAB-101
2005-11-25 "Petition to Commissioner" (notice that Applicant's
         Petition to Revive has been forwarded to Office of
         Assistant Commissioner, but where is Petition) …..................... SR-TTAB-102
2005-11-25 "Applicant's Communication" (just a blank page which
         says ,"There is no image for this record.) ….................................. SR-TTAB-103

### E.  **TTAB "Proceedings" Documents** *(continued)*

2005-09-23 "Delete Entry" (just a blank page which says,
    "There is no image for this record." However, missing from
    the Record here, on this same date, are Applicant's Petitions to
    Revive, for both Trademarks; so please see SB-TTAB-103,
    2005-09-23, for these missing, lost or ditched documents.) ..... SR-TTAB-104
2005-08-18 "Appeal Dismissed; Application Abandon" (late filing)   SR-TTAB-105
2005-08-08 Appeal To Board (Notice of Appeal) ............................ SR-TTAB-106

### **USPTO STATUS DOCUMENTS FOR THIS CASE**

2014-12-11 Status Documentation for this Trademark ….............  SR-STATUS-001

1

### V.  **APPELLANT LIGHT, AS AN IFP LITIGANT, HEREBY REQUESTS THAT THIS CASE BE HEARD ON THE ORIGINAL RECORD, IN ACCORD WITH F.R.A.P. RULE 24 (5) (c )**

According to Federal Rules of Appellate Procedure, Rule 24 (5)(c) :

"Leave to Use Original Record. A party allowed to proceed on appeal *in forma pauperis* may request that the appeal be heard on the original record without reproducing any part."

Therefore, Appellant Light hereby requests that this Case be heard on the Original Record, especially since the Case documents are available in TSDR on the USPTO website (www.uspto.gov).  All references in this BRIEF to documents in the Record  are in accord with the numbering system detailed in the Table of Documents in the USPTO Original Record,  beginning on page xvii of this BRIEF.  However, the handling of Appellant's documents, by the USPTO staff, has been adversarial.  Please see MOTION FOR CORRECTIONS TO THE RECORD (SR-TTAB-009), incorporated herein by reference.

Opposing counsel queried Appellant Light about a Joint Appendix, but no agreement was reached on which documents to include, and there is a lot of mis-titling of documents in the USPTO Records.  The Table of Contents of a proposed Joint Appendix for one of the Cases, sent to Appellant by USPTO counsel, left out key documents – but did put in a lot of Appellant's Change of Address filings, usually just considered "housekeeping".   Apparently, they hope this will make Appellant look unstable, but – most of these are just changes to Appellant's email addresses, or

2

changes in mail-receiving facilities (like MBE's).   Appellant Light has been very stable

in her living arrangements, and has lived in the same apartment building for over nine

years, changing apartments within the building only once.

### VI.    STATEMENT OF RELATED CASES:  There are none.

### VII.    JURISDICTIONAL STATEMENT

This Case is within the jurisdiction of this Court, as an Appeal for Review of a

Final ORDER, dated December 13, 2013, of the USPTO Trademark Trial & Appeal

Board (TTAB) (see SR-TTAB-003).  In accord with F.R.A.P. Rule 24 (5)(c), cited

hereinabove, Appellant Light requests permission to "attach" this Final Order  to this

Brief, by incorporating it herein by reference.  Appellant Light, as an Applicant for

Trademark Registration, appeals for review of this TTAB Final Order, pursuant to

Federal Law as expressed in 15 U.S.C. § 1071(a)(1).

### VIII. STATEMENT OF THE ISSUES

Please see the TABLE OF CONTENTS, Section XII, The Argument, pages ii-

vii, for a short listing of the Issues, with page numbers, and THE ARGUMENTS

section itself for a longer discussion of the Issues, with supporting Arguments.

### IX.    STATEMENT OF THE CASE

This is a Trademark Registration case.  Appellant Light is asking this Court to

review the disputed Final Orders issued by the TTAB on 12-13-2013 (SR-TTAB-003 &

SB-TTAB-003), in two separate but related, VERY long-standing Cases, which have

3

been pending within the USPTO for over TWELVE (12) YEARS, and to grant

Trademark Registration to Appellant Light's two Trademarks, which are now coming

before this Court for resolution.  These Trademarks do qualify for Registration, as they

both clearly have Inherent Distinctiveness, clearly do function as Trademarks, have

been in use for a very long time, and therefore also qualify for Registration due to

Acquired Distinctiveness, under Federal Law, as expressed in 15 U.S.C. §1052(f).

Serious injustice has been done to Appellant Light, which needs to be set straight by

this Court, for the sake of other Applicants for Trademark Registration, and for the

public good.

## X.    STATEMENT OF THE FACTS

Appellant Light filed an application for Trademark Registration for this

Trademark with the USPTO, in person, in Arlington, Virginia, on July 9, 2001.  The

USPTO representatives at the window reviewed all of her carefully prepared

Application materials, including colorful samples, and filing fee, before accepting

them, and giving everything their stamps of approval at the window.

Three weeks later, to her surprise and shock, they threw all of her materials  back

to her in the mail, because the filing fee had recently gone up.  They could have just

called her!  She immediately sent in a check for the higher fee, and asked for the earlier

filing date.  But, they decided to give the Application the later filing date.  That is why

the Application is deemed to have been filed on 07-09-2001, and then re-filed on

4

07-31-2001. Examining Attorney Paul Gast was assigned to her cases.

A few months later, Applicant Light was seriously injured in an auto accident. While in recovery, she was dependent upon the assistance of others, and was less able to be concerned about typographical errors by others than she otherwise would have been! She later moved to Colorado, to stay with family members, and is still there.

On March 30, 2012, Applicant Light was notified that Paul Gast had retired. Her cases were later reassigned to Examining Attorney Linda Lavache.

These very long-standing Trademark Cases been pending within the USPTO for twelve (12) years, four (4) months, and thirteen (13) days (from the later filing date). These Trademarks have been successfully in use the entire time. The TTAB brushed her Trademark Applications "off the table" on December 13, 2013. These two Court Cases are her Appeals to the TTAB refusals of Registration for her Trademarks.

Would you recognize these Trademarks if you saw them again? Then they are Inherently Distinctive! They also have long been successfully in use, and therefore also easily qualify for Registration under a claim of Acquired Distinctiveness, under Federal Law as expressed in 15 U.S.C. § 1052(f).

## XI.    SUMMARY OF THE ARGUMENT

This Trademark is beautiful, colorful, easily recognizable as a Trademark, Inherently Distinctive, and has long been recognized as a Source Indicator for Appellant Light's goods. It has been in use for over forty-five (45) years, both in

black-&-white and in color, including during the entire TWELVE (12) YEARS during which this Trademark application has been pending within the USPTO. This Trademark should have been granted registration long ago. In order to brush these very valid and long-standing Trademarks "off the table", the TTAB had to commit serious Errors in Law, which are now in need of this Court's review.

It is crystal clear, and inescapably clear, that this Trademark <u>does</u> function as a Trademark, and does serve as a Source Indicator to distinguish Appellant Light's goods from the goods of others. It therefore easily meets all current requirements for Registration under U.S.C. § 1052(f), for Acquired Distinctiveness, which only requires that the Trademarks be in continuous use for five years before a claim of Acquired Distinctiveness is made.

These Trademarks are beautiful, recognizable, and have long been successfully in use. Registration should clearly be granted to these Trademarks.

## XII.  THE ARGUMENT

<u>Standard of Review.</u>  The Standard of Review requested for this Case is *De Novo*.

**Issue # 01:  The Original Trademark Application is not all at the beginning of the Record, where it should be.**

**a.      The Judges will have to look in eight places in the USPTO Records for SHIMMERING RAINFOREST to even find most of the elements of the Original Trademark Application.**  These are:  (1) SR-TMDOC-096 (2) SR-

6

TMDOC-095, (3) SR-TMDOC-094, (4) SR-TMDOC-092, (5) SR-TMDOC-078, (6)

SR-TMDOC-077, (7) SR-TMDOC-073, and (8) SR-TTAB-004. (For all of the pages

of the Triple-Shimmering Playbook in one place, including the Cover, please see SR-

TTAB-004.) The USPTO staff plundered and dismembered the Original Application,

uploading the Application form as blurry, leaving Specimens out, and uploading crisp,

colorful pages as almost unrecognizably blackened. They looked like charred trees

after a forest fire! The actual Specimens were crisp, bright and colorful!

Examining Attorney Gast tried to set some of this straight, (SR-TMDOC-078,

SR-TMDOC-077, SR-TMDOC-073), on 2004-02-10, over two years after the original

filing date of the Application, as he knew  the way the Original Application materials

looked (they were filed on paper, over the counter), and could see that they had been

really badly uploaded by USPTO staff.  So some of the Original Application materials

were re-uploaded, at his direction, in full color, with better repro, just ended up over-

lightened, instead of blackened, still stickered with original filing dates from 2001.

However, though the quality of the uploads were improved, his subordinates still

left off pages of the original Application, including a chunks of pages at the end of one

of the Specimens (Playbooks), which he apparently did not notice.  So Appellant, in

her MOTION FOR CORRECTIONS TO THE RECORD (SR-TTAB-009) asked that

these Specimens be properly uploaded, comprehensively, and provided complete and

accurate  copies of the documents without any "missing" or "lost" or "ditched" pages,

7

and asked that these be placed on the Record, at the beginning, for CAFC review later, but this was not done.  So she at least sent in a complete Triple-Shimmering Playbook, which was one of the Original Specimens which got "left off" and later plundered and dismembered by USPTO staff members.  This was later put on the Record (SR-TTAB-004), as an Exhibit for her MOTION FOR CORRECTIONS TO THE RECORD (SR-TTAB-009).

Many of the original Specimens are covered with CANCELLED stamps, stamped over both acceptance dates, 07-09-2001 and 07-31-2001.  This is misleading – some note should have been made of their acceptance on 07-31-2001.

    **b.**    **The document titled "Drawing Original Restored" (SR-TMDOC-093) is an error, as this Standard Character version was never one of the Original Drawings.  This was filed as an alternate version almost EIGHT YEARS LATER (SR-TMDOC-052) .  This was an "OFF BY EIGHT YEARS" mistake by the new Examining Attorney, after the previous Examining Attorney retired.**    This was mistakenly dropped into the beginning of the Records for the Case in 2012, by the new Examining Attorney, This can easily be verified by the original Examining Attorney Paul Gast, although he has retired.

    **c.**    **Then, instead of correcting this Error, another wrong entry was dropped into the Record ( SR-TMDOC-032), a back-dated, blurry version of the Original Trademark Drawing, mis-titled "Amended Drawing".**  Why do this?  This was a

8

copy of the Original Drawing, not an amended drawing, and Applicant never sent in

any copy of her Original Drawing as an amended one.  Applicant does not know who

did this, but it was sadly fraudulent, an apparent attempt to make it look as if Applicant

sent in her Original Drawing as an amended one, although she never did, while they

were attempting to substitute an eight-years-later drawing for the Original one. This is

all highly strange, and totally incorrect.

Yet, all the new Examining Attorney ever had to do was to correct her mistake.

When Applicant first saw this, she asked in a written filing that it be corrected (SR-

TMDOC-031), but the new Examining Attorney never responded to her request, or

made the needed correction, just making a "Notation to the File" that she had

"processed" the request (SR-TMDOC-029 ).

The Original Drawing was a Design Trademark, not a Standard Character

Trademark.  This Standard Character version was first offered as an alternate version in

a Response To Office Action (ROA) (SR-TMDOC-057) filed 12-16-08; the filing was

rejected as late, and refiled with a Petition to Revive on 2009-03-12 (SR-TMDOC-

052).  Mr. Gast immediately rejected this version, and it was not pursued further by

Applicant, who dropped it at that time, in 2009.  It was no longer "at issue" after that

time.  Appellant Light's efforts to get all this corrected have thus far not been heeded or

responded to, but this should have been set straight.

**Issue # 02:  There have been at least 50 (fifty) flagrant, serious Incidents of**

9

**Document Mishandling by USPTO staff, in handling the documents for this Case, which have affected the Records.** Many items in the Record are missing or badly uploaded, skewed and blackened, or made blurry and unreadable, so that the Trademark is misrepresented in the Records. This is unfair to Applicant and the public.

**a.      This affects the Records,which affects the Court of Appeal Judges, because they have to review the Records, for a good understanding of the Case.**

These problems in the Record are relevant, because pursuant to U.S.C. § 1071(a) (4), "The United States Court of Appeals for the Federal Circuit shall review the decision from which the appeal is taken on the record before the United States Patent and Trademark Office." So, this Record should have been made correct to the greatest extent possible. Problems with the Record should not have just been ignored.

In her TTAB MOTION FOR CORRECTIONS TO THE RECORD, (SB-TTAB-010) dated 2013-10-08, page 68, Applicant asked the TTAB to remedy these errors:

> "All of the errors and Document Mishandling, listed herein, should be corrected to the greatest extent possible, at least for the sake of the CAFC Judges, who may be Reviewing these Records next. ... Errors made by the USPTO should probably be corrected by the USPTO, while this case is still pending within the USPTO. This is hereby respectfully requested."

Yet, the TTAB did not do this. So, you have the Record before you, in partially mutilated disarray. (Please see the MOTION FOR CORRECTIONS TO THE RECORD for this Case [SR-TTAB-009] . There is a separate MOTION FOR CORRECTIONS filed on the same date, for SHIMMERING BALLERINAS &

10

DANCERS, detailing another 52 Incidents of Document Mishandling for that

Trademark as well.  (These MOTIONS may seem long, but are not hard to read, as

they are full of illustrations!) There are a total of 102 Incidents of serious Document

Mishandling, by the USPTO, set forth in these MOTIONS, for both Trademarks.

     **b.**     **There has also been a lot of mis-titling of documents in the Record by**

**the USPTO.**  Appellant has tried to clarify the contents of the Record by lightly

annotating the Documents lists in the Tables at the beginning of this BRIEF.

     **c.**     **Possible reasons for the earlier mishandling of the documents for**

**these cases, by the USPTO.**  This could be partly due to racial or religious prejudice,

on the part of some of their staff members.  "Prema Jyothi" is an Indian name which

means "divine love and divine light," which Ms. Light received from her beautiful and

beloved Sri Gurudev Swami Satchidanandaji Maharaj, a very awesomely beautiful,

fantastic and saintly Guru from India.  His teachings are extremely beautiful, and so is

he!  But some people do not understand this, and slander her, just because her religion

is a little different from their own.

     Appellant Light has experienced a lot of plagiarism of her creative works, partly

due to the fact that she has created a multi-racial and multi-religious cast of storybook

characters, in hopes of encouraging racial and religious harmony, by portraying people

of all races and religions as getting along well with one another.  She never dreamed

that this would have the opposite effect on some people, who say things like, "What

11

right does she have to create latino characters, when she is not a latina? We're going to

take those characters right off her hands!" And then they STEAL the latino and latina

characters? How weird is that? Totally unexpected, and sad, actually! And Ms. Light

has been trying to alleviate prejudice! The people doing this have thrown inter-racial

harmony right out the window, in disregard for truth, honesty, and world peace! How

can people do this? This is not neighborly! Yet the peace and harmony are all the

more needed, because of the wrong actions of others.

Freedom of religion is allowed in America. Appellant Light's beloved Sri

Gurudev Swami Satchidanandaji has always deeply believed in God, and so does she.

She is still Jewish, and surprisingly, there is still a lot of anti-Semitism in America.

One never knows what is going on, in other people's personal lives, and some of

the people who work in the very large USPTO, with more than 9,000 people, may be

friends of some of the people who have been plagiarizing her creative works.

As mentioned in the hereinabove-referenced MOTION, pages 2-6:

"What possible motives could there be for so much Document Mishandling?
What was done to the Specimens in this case gives rise to questions about motives
which could involve the theft of intellectual properties.
         Sometimes people who work in jewelry stores are tempted to swipe the jewelry
which they are handling all the time. Similarly, people who often handle the creative
works of others may be tempted to try to swipe them also. However, this is wrong,
because it harms the people whom they are supposed to be serving, and it is the
opposite of what they are supposed to be doing.
         People working in the USPTO may be tempted to "steal" characters, ideas or
illustrations for creative work they are doing "on the side", or want to "give" these
things as gifts to their friends to develop. Or, in their personal lives, they may know
someone who is already plagiarizing another author or illustrator's work."

12

A few of the "missing" Specimens, and the chunks of pages dropped off of the books, highlight three sets of Ms. Light's popular characters: Soggy The Rainforest Froggy and his fellow froggies; The Wind-Harp Butterflies; and a colorful, fluttering little family of parrots. The Specimens showcasing these were badly blackened, beyond recognition, by USPTO staff, in uploading crisp and colorful images into the Records, possibly to obliterate any record of these being on file with the USPTO.

The froggy Specimens have disappeared? Hmmm, where did they go? They didn't hop away by themselves! Someone in the USPTO may have been tempted to slip these little froggy characters into their pockets, but -- this is not at all fair, either to the little froggies, or their mother, Applicant Light!

Theft of intellectual property could have been motivated by someone's desire for monetary gain. Still, let us all continue to hope for Peace On Earth, anyway!

d.      **A new, related issue is the recent garbling of the Record for this Case in TSDR. The USPTO has recently garbled the online Records for this Case, while Appellant Light was at work on this Brief, just before its due date.** If she clicked on a Case document in the Record, viewed it, and clicked to download the document, the downloaded document bore no relationship to the document viewed. Appellant is good with computers! So, the problem was with the site. Apparently someone over there didn't want Appellant to be able to access her Case Records at that

13

time. Hmmmm. Not an ethical way for them to try to win a case! (The fox guarding

the henhouse was growling!) But after the due date passed, the problem cleared up, so

Appellant was able to redo the front Tables and make them more accurate! The Code

of Federal Regulations states, in 37 C.F.R. § 2.27:

> "37 C.F.R. § 2.27 Pending trademark application index; access to applications.
> (a) An index of pending applications including the name and address of the
> applicant, a reproduction or description of the mark, the goods or services with
> which the mark is used, the class number, the dates of use, and the serial number
> and filing date of the application will be available for public inspection as soon
> as practicable after filing.
> ... (c) Decisions of the Director and the Trademark Trial and Appeal Board in
> applications and proceedings relating thereto are published or available for
> inspection or publication."

Therefore, it is not only wrong to tamper with the Record, but also illegal. If people

working for the USPTO are dishonest, or interfere with the documents, they are in

violation of Federal Law. One somehow expects higher ethics of people in people in

positions of trust, in esteemed Federal Agencies. Does anyone in this Court still care

about the actual truth? Hopefully yes! We are living in the star-spangled USA!

In Board proceedings, or in a Court, documents received should be conveyed

honestly to the Judges, by support staff, exactly as submitted. Otherwise, the support

staff have overstepped their boundaries, and betrayed not only the public trust, but the

trust of their Judges. Support staff should not be pre-judging the cases before the

Judges receive the materials, and then slanting the cases by ditching or altering the

materials, to try to engineer their own desired outcomes for the cases. What is wrong

14

with their doing this? Everything. Pre-judging the cases, and deciding to give the Judges only what they feel like conveying – is not the job the support staff were hired to do. A Judge needs to be able to review the materials, exactly as submitted by both sides. Tampering with the litigants' submissions, by support staff, is ethically wrong in every way, in the USPTO or the Clerk's Office of the U.S. Court of Appeals.

**Issue # 03:  There are several clear Errors in Law made by the TTAB in arriving at its Final Order for this Case, which need to come under the review of this Court.**

**a.     This Trademark qualifies for Registration because it is Inherently Distinctive, and easily recognizable.**     Are these Trademarks Inherently Distinctive? One look at them will tell you "yes". This is especially true of the color versions of the Trademarks. Appellant Light originally filed for Trademark registration for the Trademarks in black-and-white, because she had thought that this would allow more versatility in the use of the Trademarks, which could then be used in any colors, and in any way. But, the public liked the distinctive color version, and Applicant Light later decided to ask for registration for the color version instead, which normally should be no problem, since the black and white version  allows for the use of color in any way, "without limitation", as stated in TMEP section quoted hereinabove.

**b.     This Trademark also easily qualifies for Registration on the basis of Acquired Distinctiveness under Federal Law, as stated under 15 U.S.C. §1052 (f).**

15

**It was a plain and clear Error in Law, to fail to grant Registration to these Trademarks, under 15 U.S.C. §1052 (f).** This Trademark easily qualifies for Acquired Distinctiveness, as it has been in use for much longer than this Federal Law even calls for, to qualify for Registration due to longtime usage.

The U.S. Court of Appeals, Federal Circuit, recognized the validity of Acquired Distinctiveness claims in *In re Seats, Inc.*, 757 F.2d 274 (1985), in which it reversed a TTAB denial of registration, granting registration for Appellant, who sought registration for its Trademark, "on the grounds that the mark had become distinctive of its services." The Court granted Registration, quoting 15 U.S.C. §1052 (f): "Except as expressly excluded in paragraphs (a) (b),(c ), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce." The public no doubt gratefully thanks the Court of Appeal Judges who "sat" on this *Seats* case!

In *In re Dial-A-Mattress*, 249 F.3d 1341 (2001), Appellant sought registration of its Trademark on the basis of both Inherent Distinctiveness and Acquired Distinctiveness. The U.S. Court of Appeals, Federal Circuit, reversed the denial of registration by the TTAB, in this case, and granted registration of the Appellant's Trademark. They also overlooked the "minor misspelling" of 1-888-M-A-T-R-E-S-S, although this was a misspelling of a major word in its Trademark and products (oops!), holding that the difference between "MATTRESS" and "MATRESS" was

16

"immaterial". The error in the spelling of its central products was not held to be a bar

to registration of its Trademark for the mattress firm. The firm didn't care, the public

didn't care, and the Court didn't care – the Trademark was distinctive in representing

the firm's services.

This case is also notable for it's spelling inaccuracies, as its Trademarks are

spelled DIAL A MATRES, DIAL-A-MATTRES, and DIAL-A-MATRESS, (all three),

though its company is called Dial-A-Mattress. Without prejudice against them for its

problems in spelling its principal products, the U.S. Court of Appeals, Federal Circuit,

reversed a TTAB refusal to register their requested Trademark, 1-888-M-A-T-R-E-S-

S", and granted them registration of their requested Trademark. It could be that it does

not matter if you can spell it, if you can dial it, and order it! You're sleeping on it – you

don't have to be able to spell it! Regardless of typographical errors or spelling modes,

they had a good mattress, or matress, or matres, or mattres, and this is what mattered.

The U.S. Court of Appeals, Federal Circuit, did not hold spelling or typos against them,

and hopefully made the decision promptly, without having to "sleep on it" – the world

can always use more good mattresses! The Court granted registration to the Trademark

– however it was spelled, regardless of typographical considerations, or its Trademarks

which spelled the same thing in four different ways. The Court decision was great –

the company could "rest its case", and hopefully "sleep more easily" because of it!

Appellant Light cites this case, not only in support of a claim of Acquired

17

Distinctiveness, which is on point, but also as a case in which typographical or spelling errors were not held to be a bar to registration of a Trademark.

The claim of Acquired Distinctiveness was made in Appellant's Response to Office Action (ROA), first filed on 11-27-12 (timely, on 11-26-12 in Colorado, but a few minutes after midnight on the East Coast). Her ROA was therefore deemed filed on 11-27-12, and therefore deemed "abandoned", so she had to file a Petition to Revive both of her cases, and so she refiled the ROA with the Petition on 01-28-13. This was when she was hit with a doubled Petition Fee (see Issue #10).

c.    **The TTAB "broke the law" by failing to grant Appellant's Request for Remand, dated 03-28-13, when the Examining Attorney failed to issue a Non-Final Office Action, in response to New Issues, as mandated by TMEP § 714.05(a). If the TTAB is going to call upon provisions of the TMEP, they themselves should honor the TMEP.** It was an Error of Law for the Examining Attorney (EA) to fail to issue a Non-Final Office Action, and another Error of Law for the TTAB to refuse to remand the case back to the EA for the proper Non-Final Office Action. TMEP § 714.03 calls for non-final Office Action with a six-month response time, in response to unresolved New Issues. Further, TMEP § 714.05(a) states:

> "If the applicant submits an amendment that is not offered in response to a refusal or requirement, and the amendment is not acceptable, the examining attorney generally must issue a new nonfinal action with a six-month response clause, addressing the issues raised by the amendment and continuing all other refusals and requirements. **The following are examples of amendments that would require a new nonfinal action: (1) Amendments to the drawing,**

18

**unless the examining attorney had previously required that the drawing be amended or the amendment is acceptable and does not raise other issues."** (*Emphasis added.*)

Appellant Light had not specifically asked that the Trademark be registered as a color mark before, though she may have shown it in color. A black-and-white mark can be used in color, without being registered in color. But formally asking to register the mark in color instead, was definitely a New Issue. The Board broke the law in its impatience to quash the Trademark. But, its desire to quash the Trademark was unjust. And its disregard for due process, in this instance, was a mistake, a clear Error in Law, and a bad precedent to set for the other members of the public.

    d.    <u>One reason the Case is so long-standing is that it has come before the</u> <u>TTAB four times, and was remanded to the Examining Attorneys three times (SR-</u> <u>TTAB-041, SR-TTAB-066, SR-TTAB-071) for further consideration.  It did not</u> <u>just come before the Board once.</u>

The request for registration of this Trademark in color, instead of black-&-white, was a New Issue, as it had never been raised before. As stated in TMEP § 807.14 (e)(i), **a request for registration of a Trademark in black-&-white does not preclude its use in color, as it "presumes its use in any color, without limitation".**

A request for registration of the Trademark in color, INSTEAD OF black-&-white, is a frequently-made and frequently-granted request in Trademark registration.

19

The new EA neglected to observe the provisions of TMEP § 714.03 and § 714.05(a), which required her to issue a Non-Final Office Action in response to a New Issue, and she should have been corrected by the Board. This failure to observe proper due process was a clear Error in Law.

However, Appellant is requesting that this Court issue a ruling which grants registration to her Trademark, rather than a remand to the TTAB for further consideration. If the TTAB hasn't had time to grant registration to her Trademark in over twelve years, a few more months will not help them see why they should do this.

**e. A ruling by this Court, granting registration to Appellant's Trademark, would serve the public good, because it would encourage the TTAB to observe due process, even for humbly-circumstanced Applicants, in accord with provisions of the TMEP and Federal Law. This would help many future Applicants for Patent & Trademark Registration, all for the good of the greater public.**

**f.      This would also promote judicial economy, as it could save many other Applicants from having to appeal to the U.S. Court of Appeals, due to a failure of the Board to observe proper, time-honored, and lawful due process, in its handling of Trademark cases.**

**Issue # 04:  This Trademark does clearly function as a Trademark, and does serve as a Source Indicator, to distinguish Appellant Light's goods from the goods of others.** This Trademark clearly functions as a Trademark, and does so beautifully.

20

It is inescapably clear that these Trademarks function as Trademarks on the products. It is *res ipsa loquitur.* Anyone can plainly see this.

The TTAB Judges for this case say that they don't think that this Trademark functions as a Trademark, and yet it clearly does.    Even the wording customarily placed under these distinctive Trademarks identifies them as Trademarks.  Not only can the public easily see that these are Trademarks – the public cannot avoid seeing them as Trademarks!  The TTAB is just looking for excuses to deny Registration to these Trademarks, but their excuses are flimsy ones.

Appellant Light respectfully calls the Court's attention to the fourth pages (back covers) of the Specimen leaflets, which state, directly under the Trademarks:

> *"Be sure to look for this unique Shimmering Rainforest Trademark, above,*
> *to assure you that you have publications & products with the genuine, original*
> *Shimmering Rainforest Characters,*
> *rather than knock-offs or plagiarized versions of them!*
> *This beautiful family of characters appears in leaflets, booklets,*
> *books and a wide variety*
> *of popular publications, to delight you, entertain you, inform you, and inspire you!*
> *We are happy to have the privilege of serving you!*
> *May God bless you and peace be with you!*
> *Om Shanthi, Om Peace!*
> *-- Prema Jyothi Light"*

As Appellant stated on page 16 of her Appeal Brief to the TTAB, filed 06-04-13:

> "The use of the Trademarks on these leaflets clearly show that the Trademark does function as a Trademark and Source Indicator on the Specimens, in full accord with the provisions of TMEP § 904.07(b).  The Trademark is an expressly-stated Source Indicator for Applicant's goods.  This is sparklingly, crystal clear to anyone of normal, bright intelligence.

21

In accord with TMEP § 904.07(b), a Trademark meets this requirement if: "(1) it identifies the goods/services of the applicant and distinguishes them from the goods/ services of others; and (2) it indicates the source of those goods/services." This Trademark clearly succeeds at both."

a.    **This Trademark is easily recognizable, and often placed on the back cover of the leaflets or publications, where Trademarks are customarily found.** Please see the Illustrations at the beginning of this Brief, to see how the Trademark is used on the back cover of a leaflet. It is not only clear, but unavoidably, inescapably clear, that this Trademark functions as a Trademark, and Source Indicator for Appellant Light's goods.

b.    **The Trademark is the whole Trademark, inside the outer bounding box, including its fine print as well as the larger creative calligraphy.** All of its elements contribute to its unique and Unitary Commercial Impression.

c.    **All of the elements of the Trademark, including the fine print, contribute to its overall Fanciful, Distinctive, Unusual and Unitary Commercial Impression,   in accord with TMEP § 1213.05, which should make further word or design searches unnecessary.** The entire Trademark includes everything in it. The whole Trademark, as a larger unit, has become recognizable as the Trademark.

All objections to the Trademark on grounds of Multiple Marks were formally dropped by the Examining Attorney, on behalf of USPTO, in Office Action filed 05-26-12 (SR-TMDOC-027).

**Issue # 05:  Registration for this Trademark, in color, should be grantable,**

22

**even if it was originally submitted in black-&-white.  There is provision in the**

**TMEP for this [TMEP § 807.14 (e)(i)].**  This Trademark should easily be registrable

in its color version, in accord with TMEP § 807.14 (e)(i):

> "The amendment of a black-and-white special form drawing to one claiming a
> color(s) as a feature of the mark generally does not constitute a material
> alteration.  If a mark is initially depicted in a black-and-white special form
> drawing in which no color is claimed, the drawing is presumed to contemplate
> the use of the mark in any color, **without limitation**.  [*Emphasis added*.] See,
> e.g., *In re Data Packaging Corp.*, 453 F.2d 1300, 1302,172 USPQ 396, 397
> (C.C.P.A. 1972).  The amendment of the black-&-white drawing to one claiming
> a particular color as a feature of the mark is, therefore, a restriction or limitation
> of the applicant's rights."

So, Appellant's rights are actually more limited by registration of her Trademark

in color!  But, since the Trademark has long been in use in color, it should be possible

to register the Trademark as a color Trademark.

     **a.**    **This Trademark, in its color version and in its black-&-white version,**

**have long been in use, and are easily recognizable as the same Trademark, so the**

**Overall Commercial Impression remains the same.  Many businesses use their**

**Trademarks in both color and black-&-white.  It is not unusual to do this.**

TMEP § 807.14 states:

> " The modified mark must contain what is the essence of the original mark, and
> the new form must create the impression of being essentially the same mark."
> And, "However, while the question of whether a new search would be required is
> a factor to be considered in deciding whether an amendment would materially
> alter a mark, it is not necessarily the determining factor."  And, "The controlling
> question is always whether the old and new forms of the mark create essentially
> the same commercial impression."

23

Also, according to TMEP § 807.14(e)(ii), regarding Design Marks, "In general, the addition, deletion, or amendment of color features in a design mark does not result in a material alteration of the mark."

This Trademark, in color and in black-&-white, are recognizably the same Trademark. The exact same positioning of the black elements on both versions of the Trademark make it easy to see that both versions are recognizably the same Trademark. One has background colors, and one doesn't, but the overall design and calligraphy are very easily recognizable as the same.

The "architecture" of this Trademark is the verbal elements in black, both the larger creative calligraphy and the smaller fine print. These remain the same, and in the same places, for both the black-&-white version and the color version of the Trademark. This makes the Color and Black-&-white versions recognizably the same.

Picture the Parthenon, with its famously beautiful columnar design. Now picture it with the sky behind it. It is still the same Parthenon! The clouds can be white with blue skies, or rosy tones at sunset, or starry skies in the twilight. The skies are the background, but the Parthenon is the same. Similarly, the soft colors, in the color version, are just background for the architecture of these Trademarks – and the architecture is recognizably the same Trademark. Like the Parthenon at morning, noon, or night, this Trademark is recognizably the same Trademark, whether in color or black-&-white. The original Trademark was a Design Mark, with a "flag" or columnar

24

design; if it didn't have a design, then the EA wouldn't have rejected a proposed radial design, also long in use, because it was a different design, even though it included all of the same verbal elements. This design is the same in color or in black-&-white.

**Issue # 06: Registration of the Trademark is requested with all typographical errors corrected, in a Trademark with many fanciful verbal elements.**

a.      **Regarding typographical errors made by USPTO staff, in typing the small print straight from this Trademark into the electronic Records, they have, to date, made an unusually huge number of typographical errors themselves. And, they have refused to correct many of their own typographical mistakes, even when these have been called to their attention, and correction has been requested, and even when their mistakes affect public Trademark searches online. When asked to correct their errors, they just make a flurry of new ones. This is actually unlawful.** This has been apparent from the Status documents online for this Trademark (see SR-STATUS-001 or SB-STATUS-001, for comparison of the verbal elements as they are in Status, with the Original Trademark itself. Every time the USPTO staff is asked to correct some errors, they seem to make more new ones. Distressingly, someone on the USPTO staff was going in and adding more typographical errors in the fine print in the online Status Records for these Trademarks, AFTER Appellant filed her Appeal Brief with the TTAB. This is deliberate

harm-doing. Why would anyone do that? Appellant doesn't have a clue.  But, they were doing this, and this was wrong.

     **b.**    **Currently the tally of USPTO keystroke errors, by USPTO typists, in typing these Trademarks into the Record, is three-hundred-thirty-four (334) keystroke errors, for two Trademarks which each have been portrayed, on their Original Drawing Pages, as only four inches square.  (They have made 160 keystroke errors in SHIMMERING RAINFOREST, and 174 keystroke errors in SHIMMERING BALLERINAS & DANCERS). These should all be corrected.**
This is a huge number of errors for them to make"accidentally" in Trademarks which are that small.  Their errors have all been detailed and listed in Appellant's MOTIONS FOR CORRECTIONS TO THE RECORD, and are all verifiable.

     **c.**    **Appellant has been in recovery from a bus transportation accident, and two serious car accidents, and therefore has had to rely upon others, who have made inadvertent mistakes in typing.**

     **d.**    **Here are examples of corrections of simple typos which her own typists made, which Appellant is requesting to be allowed to correct.**

     A fanciful character name which ends in FLUFFA-FAFFAFOO ends on one line, and the next fanciful character names, FRANZ & FRANCINE, THE RAFFRETTALOES, were supposed to begin on the next line.  But the typist accidentally ran the two names together, resulting in FLUFFA-FAFFAFOOFRANZ &

26

on one line, and FRANCINE, THE RAFFRETTALOES on the next line. This is leaving out what used to be called, on old-time typewriters, a "carriage return", or on computers, hitting the ENTER key.

Another fanciful name which was accidentally typed as TWIZZLE-DIZZLE-HIZZLE-FIZZLE-GIZZLE-MIZZLE-BIZZLE-ZIZZLES, should have been TWIZZLE-HIZZLE-FIZZLE-GIZZLE-MIZZLE-BIZZLE-ZIZZLE-ZAZZLES. The typist almost made it to the finish line, but apparently brain fade set it and she didn't quite make it all the way.

Here's another one:  LISTEN TOTHAT BUNNYRABBIT was supposed to be LISTENTOTHAT BUNNYRABBIT.  A typist put in a space that shouldn't have been there (between LISTEN and TO). Another entry which ended in JEWELBIRD was mistakenly typed as JEWEL BIRD (with a space between JEWEL and BIRD).

**e.**      **No typographical corrections are requested for the larger, primary verbal elements of the Trademark, which are the larger creative calligraphy for SHIMMERING RAINFOREST.**

**f.**      **Correction of typographical errors, by Appellant's typists, in very fine print, does not alter the Overall Commercial Impression of the larger, very distinctive Trademark in any way, so these should be allowable.**  The Trademarks have instant overall visual recognition, even with minor corrections.

**g.**      **The deliberate "big blob typos" on the part of the USPTO, in mis-**

27

**portraying Appellant's Trademarks in the electronic Status Records, which should**

**be corrected**.   Running all the finer verbal elements into one big blob, without

separating the word-groups in any way, has damaged the TESS searches, because in the

Trademark, each word-group is on one or two lines by itself; running all the words

together in a big blob makes it hard to see where one entry ends and another begins, or

which words "go together".  This misrepresents the Trademark to the public.  The

Examining Attorneys have refused to correct this, when requested to do this by

Appellant, though it misrepresents the Trademark to the public.  The big blob thing, in

the Status Records for both of these Trademarks, is like one giant set of typographical

errors on their part, for each Case.

The word groups should not be all run together in a big blob in Status.  For both

Trademarks, these are the "big blob typos" on the part of the USPTO.

**h.     Applicant is asking to be allowed to correct any typos which her own**

**typists have made, as long as the Overall and Unitary Commercial Impression of**

**the Trademark remains the same.**

**i.     Corrections of typographical changes in Trademarks are supported**

**by case law.**   In support of correcting the typographical errors in the words, the case

of *In re Larios*, 35 USPQ2d 1214 (TTAB 1995), a change to "VINO DE MALAGA

LARIOS" was ruled to be not a material alteration of "GRAN VINO MALAGA

LARIOS".  Since the overall design. and overall commercial impression of the

28

Trademark in both versions were essentially the same, the change was allowed.

Another supporting case is *In re Innovative Companies, LLC*, 88 USPQ2d 1095 (TTAB 2008), in which amendment from "FREEDOMSTONE" to "FREEDOM STONE" held not a material alteration).

Another supporting case is *Paris Glove of Canada, Ltd. v. SBC/Sportco Corp.*, 84 USPQ2d 1856, 1862 (TTAB 2007), in which AQUASTOP on one (curved) line was held to be similar enough to AQUA and STOP on two horizontal line, so that this was not deemed to be a material alteration.

Another case herein cited, in support of granting Trademark Registration despite any typographical concerns, errors or changes, is *In re Dial-A-Mattress*, *supra*, set forth on page 17 of this BRIEF. Mattress, Matress, Mattres, Matres – ? The Trademark in this case was distinctive of the company's services! Registration was granted. Spell it any way you like! Dial it! Buy it! Sleep on it! The important thing is: get a good night's sleep. Everything will be easier in the morning!

**Issue #07. As for disclaimers, Examining Attorney Gast persuaded Appellant to agree to disclaim the word RAINFOREST in isolation, the word CHARACTER in isolation, and the word COLLECTION in isolation, but SHIMMERING RAINFOREST, as a pair of words together, is not disclaimed.**
And, according to the TMEP, disclaimers, overall, are not needed when a Trademark has a distinctive, overall Unitary Commercial Impression.

**Issue #08:   This Trademark conveys a Unitary Commercial Impression, in accord with TMEP § 1213.05, which should make further word or design searches unnecessary.**   This is true, even if the Trademark, is registered in color, and even with all requested typographical errors corrected.  TMEP § 1213.05 states:

> "A mark or portion of a mark is considered "unitary" when it creates a commercial impression separate and apart from any unregistrable component. ... If the matter that comprises the mark or relevant portion of the mark is unitary, no disclaimer of an element, whether descriptive, generic or otherwise, is required."

The Unitary Commercial Impression of this Trademark makes it distinctive and easily recognizable, and a Source Indicator for Appellant's goods and products.

**Issue # 09:   There has already been some serious mishandling of Appellant Light's Court documents by the Clerk's Office in the U.S. Court of Appeals, for the Federal Circuit.**   Since the Clerk's Office in the Court of Appeals has thus far "lost", or ditched, two verifiably-filed documents (a MOTION FOR EXTENSION OF TIME, and one of two simultaneously-filed  MOTIONS FOR PERMISSION TO FILE LATE APPELLANT'S BRIEF, there is a chance that they might also try to somehow try to wreck, plunder or distort this APPELLANT'S BRIEF as well.  If so, this would be further misconduct, and a breach of trust on their part, as acts of dishonesty in handling of Court documents.  If you are a member of the Clerk's Office, reading this, and contemplating how to wreck this Brief, STOP; convey the documents to the Judges exactly as submitted; and leave the judging to the Judges.  Being Judges is their job,

30

not yours.  Please don't be dishonest on the job.

**Issue #10:**    **The herein-described Petition Fee Issue needs to be resolved by this Court, as a matter of Federal Law, for the benefit of all other Patent and Trademark Applicants across the nation.**    Current Federal Law, according to 37 C.F.R. § 2.6 (a)(15), provides for a single Fee to be paid for a single Petition, specifying: "Trademark fees. … For petitions to the Director – $100.00."  However, there is no prohibition in the statute which prevents anyone from submitting a single Petition for two Trademarks.  Appellant filed two Responses to Office Actions (ROA's) (SB-TMDOC-019  & SR-TMDOC-023) which were unfortunately a few electronic minutes late, East Coast time, although they were on time, Colorado time, and therefore these were deemed "abandoned" and had to be "revived".  So she submitted one three-page Petition to Revive (SB-TMDOC-015, on 2012-01-28) for both Trademarks together, along with the refiled ROA, explaining the situation.

However, the Petitions Office required a double-fee from Appellant, for a single Petition, because it was for two Trademarks.  After a ping-pong of electronic paperwork, she paid the extra fee, so that both Trademarks could be revived.  But, a careful look at the Federal Law on Petitions will show you that it states a Fee per Petition, not per Trademark.  The law is clear.  The Agencies should either follow the laws as written, or re-write them – not break them!  So if one Petition can easily revive two Trademarks, why charge two Fees?   In Appellant Light's Cases, the issues, dates,

31

facts and circumstances for both Cases were the same, as both Cases were moving in tandem within the system, so a ruling on the Petition would have been the same for both Cases. The extra Petition was needless paperless paperwork!

So, this needs a look from someone outside the Agency. We have a Federal Law here. What can be done? Hoping that y'all will take a look at this! Thank you!

## XIII. CONCLUSIONS

If the decisions of the TTAB in this case are not reversed by this Court, in the current proceedings, this could set a bad precedent for other Applicants. On the other hand, reversal of the TTAB decision in this case would benefit the larger public, and lead to greater fairness on the part of the TTAB, towards future Applicants.

Therefore, it would be in the best interests of truth and justice, and judicial economy, and for the public good, for this Court to reverse the TTAB decisions in this Case. Registration should be granted to Appellant's Trademark, which is long-standing, beautiful, colorful, fanciful, and distinctive. This Trademark DOES function as a Trademark, and has been recognized by the public as a Source Indicator for Appellant's goods for over forty-five years, including the more than TWELVE (12) YEARS during which this case has been pending within the USPTO. The TTAB Judges may have made these decisions on Appellant Light's Trademarks, because she is *pro se*, and not represented by attorneys in these cases.

32

Yet, even humbly circumstanced citizens of the USA, are still citizens of the USA. God bless the USA!

Appellant Light has been a prolific storybook artist and writer ever since she was about eighteen, and she is now in her sixties. Her mother was a successful professional artist, and Appellant Light has been an artist ever since she could hold a crayon. She received a Bachelor of Fine Arts degree (BFA) from the University of Colorado in 1972. Her hope has always been to delight and entertain children, and help make the world a better place!

The Trademark is easily recognizable as a Trademark, <u>does</u> function as a Trademark, and <u>does</u> function as a Source Indicator which distinguishes Appellant Light's goods from the goods of others. If the design is unusual in a Trademark, this helps to make her Trademark distinctive. If you saw this Trademark on the back of a book tomorrow, wouldn't you recognize it? You would! This means it is Inherently Distinctive, as well as having Acquired Distinctiveness.

The TTAB may be looking for excuses to deny Registration to this Trademark, but they should not "break the laws" to do so. This bright and beautiful Trademark easily qualifies for Registration under Federal Law.

Appellant Light requests that this Court grant registration to her Trademarks, rather than simply remand the cases back to the TTAB. The USPTO has had OVER TWELVE (12) YEARS, to grant Trademark Registration to Appellant Light's

33

Trademarks.  Instead, they just unfairly brushed them off the table,  in conflict with time-honored provisions of the TMEP, and in violation of the clear provisions of Federal Law.  A remand to the TTAB would therefore serve no useful purpose.

Applicant Light is asking that this Court grant Registration for this Trademark, in the interests of truth and justice, to help set good precedents for the future Board decisions, and for the greater public good.

### XIV.  REQUEST FOR ORAL ARGUMENT

Applicant does not yet know whether she will be able to afford to appear for Oral Argument, but wishes to reserve this option by requesting it here.

### XV.  RELIEF SOUGHT

WHEREFORE, Appellant Light respectfully requests the following:

1)    She requests that the Court address each Issue in this Brief, rather than ignoring most of them, as the TTAB did, or just going by whatever Issues the USPTO states in its Responsive Brief.

2)    She requests a judgment in favor of Trademark Registration for this Trademark, on the Principal Register, in its color form, with all typographical corrections requested.  If Registration is granted to these Trademarks, it might as well be with all typos in the finer type corrected, after over twelve years of waiting and hoping.  The Overall Commercial Impression is the same.  Applicant is asking to be allowed to correct any typos which her own typists have made, as long as the Overall and Unitary

34

Commercial Impression of the Trademark remains the same.

4)    Appellant requests a ruling in favor of Registration for the Trademark as a recognizable Trademark with a Uniform Commercial Impression, on the basis of both Inherent Distinctiveness and Acquired Distinctiveness.

5)    In the alternative, at the very least, would be Registration of this Trademark in its black-&-white form, although use of any colors "without limitation" should encompass the color version of this Trademark, which has long been successfully in use, especially since the color and black-&-white versions are easily recognizable as the the same Trademark.

6)    Appellant also requests a definitive ruling from the U.S. Court of Appeals, Federal Circuit, on the Petition Fee issue, as a matter of Federal Law.  This would benefit of many other Applicants for Trademark Registration, as the Fee required by law for a Petition is stated, in the law, as per Petition, not per Trademark, so people should not find themselves unexpectedly and unfairly double-charged.  Thousands of people would be grateful for the Court's assistance on this Issue, especially if a Trademark is deemed "abandoned" if an electronic communication finishes being sent even a few minutes past midnight on a deadline day, although time zones vary, thus necessitating an expensive Petition, to "revive" it, even if it is alive and well!  If the USPTO wishes to get more money from people for a single Petition, then the laws should be re-written, not broken.

35

6)    And, such other and further relief as this Court deems just and proper.

Dated:  January 11, 2015            **Respectfully submitted,**

                                    *P. Light*
                                    Prema Jyothi Light
                                    Appellant, <u>pro se</u>

12000 E. 16th Ave. #301
Aurora, Colorado 80010
(720) 648-4753
<u>premajyothilight@love4truth.com</u>

xxx

## XVI.  **PROOF OF SERVICE**

I, the undersigned, hereby affirm that I have served or caused to be served copies of the following:

> **APPELLANT'S BRIEF FOR CASE # 14-1598,** for the Trademark "SHIMMERING RAINFOREST"; filed with the U.S.
> Court of Appeals, Federal Circuit; this is a thirty-five (35)-page document, plus Cover Page and twenty-nine (29) pages of introductory tables and illustrations, plus this PROOF OF SERVICE;

Served upon the following counsel for Appellee, by electronic email, by mutual agreement, within one business day of the date specified hereinbelow.

> Nathan Kelley, Esq.
> Christina Hieber, Esq.
> Thomas Casagrande, Esq.
> Office of the Solicitor
> United States Patent and Trademark Office
> Madison Building East, Room 10B20
> 600 Dulany Street
> Alexandria, VA 22313-1450

Dated:  January15, 2015

Respectfully submitted,

Prema Jyothi Light
Appellant, <u>pro se</u>